ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
....................................................X

PATRICK F. D'CUNHA

                      Plaintiff

         v.

**ECKERD CORPORATION and its parent
Companies:Brooks Eckerd drugstore chain,
J.C. Penny, JCG(PJC) USA, LLC("Jean Coutu
USA"), Jean Coutu Group (PJC) Inc.  and
RITE AID CORPORATION (publicly held
corporations),**

                    Defendants,
....................................................X

**Civil Action No.
02-CV-4157(CRW)(LB)**

**Plaintiff's Affirmation
in Support of
Motion for Protective Order**



I, Patrick F. D'Cunha, make the following **affirmation under penalties of perjury**:

1.      I am the Plaintiff Pro-Se in the above captioned case and I am fully familiar
        with the facts and circumstances contained herein and I submit this
        affirmation in support of my motion for Protective Order.

2.      I filed this suit in July 2002, claiming age discrimination by Eckerd, under
        ADEA.

3.      Specifically Eckerd rejected me because of my age on two occasions, Aug. 2001 and
        Feb. 2002, despite my qualifications for an entry level Pharmacist Job.

4.      After Eckerd was granted summary judgment by this court, I appealed and the
        Second Circuit Court of Appeals Reversed and Remanded the case stating,
        "there remain genuine issues of material fact as to whether the reasons given
        for not hiring D'Cunha were pretextual such that a jury could reasonably find
        that D'Cunha suffered an adverse employment action because of his age."

5.      In July 2008, Mr. Bucci, attorney for Defendant informed me through a letter
        that,

                "since the Initial Disclosures in 2002, Eckerd Corporation and its
            related entities have undergone changes in their corporate structures. Most
            recently, in August of 2006, Rite Aid Corporation ("Rite Aid") entered
            into a Stock Purchase Agreement with The Jean Coutu Group (PJC), Inc.,
            and the transition closed on June 4, 2007. As a result of this transaction,
            Rite Aid ultimately acquired the assets and liabilities of Genovese Drug

<u>Stores, Inc., and Eckerd Corporation."</u>

7      In my MOL in opposition to Defendant's Motion for Summary Judgment, I had
asserted New York Law claim, that arises from same nucleus of operative facts, as the
ADEA.

8      In 2007, Second Circuit Court of Appeals Vacated the decision of this district
court and Remanded with instructions to deny Eckerd's motion for summary judgment.

9) This court granted plaintiff's motion to amend Complaint on August 10, 2009.

      For reasons set forth in the accompanying Memorandum of Law, I, Plaintiff
D'Cunha requests this Honorable Court to grant Plaintiff's motion for Protective Order
for the following reasons:

The Defendants failed to depose Plaintiff's treating Physician and Plaintiff's wife and
three daughters, Olivia, Crystal and Stacy, despite court's permission to do so in 2007.
Now defendant's attempt to depose plaintiff for a third time and his wife for a second
time, as well as deposition of his treating physician Dr. Arora and psychiatric exam of
plaintiff should be denied as defendant has abused discovery process to harass plaintiff
and by knowingly ignoring / setting aside an opportunity given by this court to do these
things in 2007.

10     A true and correct copy of Plaintiff's Responses to First Set of Interrogatories of
Defendants addressed to Plaintiff is attached as **Exh. "A"**

11     A true and correct copy of a docket sheet for this case is attached as Exh. "B"

12     A true and correct copy of 10/10/2007 email response of Mr. Bucci is attached as
Exh. "C"

13     A true and correct copy of Plaintiff D'Cunha's 2007 Deposition is attached as
Exh. "D."

14     A true and correct copy of Eckerd's attorney Mr. Bucci's 12/12/2007 letter to
Honorable Bloom is attached as Exh. "E"

15     A true and correct copy of Eckerd's attorney Mr. Bucci's 10/01/2009 letter to
Plaintiff is attached as Exh. "F"

      Wherefore, I respectfully request this Honorable court to grant plaintiff's motion
for Protective Order, as well as such other and further relief that may be just and proper.

Respectfully submitted,

Queens, NY,
Dated 10/07/2009.

Patrick F. D'Cunha.
PATRICK F. D'CUNHA, Plaintiff Pro-Se
137-22 LABURNUM AVENUE
FLUSHING, NY 11355
Tel. (718) 661-2979
Email: dragondcunha@aol.com

ORIGINAL          Exh. A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PATRICK F. D'CUNHA

Plaintiff                                    02-CV-4157 (FB)(LB)

· v.

GENOVESE/ECKERD CORPORATION              Plaintiff's Response to :

Defendants                               FIRST SET OF
                                         INTERROGATORIES OF
                                         DEFENDANTS ADDRESSED
                                         TO PLAINTIFF

I. Plaintiff acknowledges the 12 points of definitions and instructions set forth by the counsel for the Defendant.

II. INTERROGATORIES

1.      Plaintiff's wife **Agnes D'Cunha** who knows and has lived with the Plaintiff what he went through from August 2001 to present , especially the agony and pain , the plaintiff went through.        The people directly involved with the subject matter , including but not limited to the following :

**Ms. Jennifer Dolan, Mr. James Tran, Mr. John Bowls** , a senior District supervisor from New Jersey, **Mr. George Kowaski** also Supervisor in New Jersey and another **District Supervisor in charge of Sussex, NJ area** .

                                                                              Each of these persons mentioned above has important information regarding the subject matter of this lawsuit , especially in what they said and did during their encounters with the Plaintiff directly , over the phone and or through their acts of commission or omission with regard to this subject matter. Especially important : the **45 minutes** Interview of Plaintiff by Ms. Dolan, letter of Plaintiff to Ms. Dolan , Video of the Interview with Mr.Tran ( and also of the meeting at Waldwick , NJ ) , records of all the phone conversations of each of these persons with the Plaintiff and among themselves on and immediately after the date of the interview ; as also immediately before and after the Waldwick ,New Jersey meeting.

2.      I assert Privilege, because I have a right to seek Legal assistance, a right to an attorney and my attempts to do so or any of my contacts with potential Attorneys is a Privileged matter.

3.      I did suffer emotional and mental harm, leading to loss of enjoyment of normal life. The

Plaintiff's Exhibit 24·1

details of the nature of such damages can only be given after a complete assessment by a qualified professional such as a psychiatrist, psychologist, counselor or a therapist ; one or more of these. Hence, responses for numbers A through D will be provided as soon as they are available. Numbers E and F need to be clear and specific.

4.      I prefer that the monetary value of each element of the relief be determined by the members of the Jury. In the light of this position , numbers C through E are irrelevant.

5.      After I was unjustly denied a job by Mr. Tran in August 2001, I nearly gave up on the system, gave up looking for Job as a Pharmacist because I saw absolutely no reason why I should have been denied a job as a Pharmacist for which I was well qualified. I nearly gave up on life itself .Life seemed to have lost its meaning for me , hence I did not anymore want to look for a job, I became kind of an Introvert Person. I started business Partnership with another person from May 31, 2002. Details of this partnership business I can not provide as it would violate the rights of my partner and the rights of the business entity. Hence I assert Privilege. A through G have no relevant answers.

6.      Please refer to the answer in # 5.
B & C - I assert Privilege.
D       Will be made available as soon as properly identified.
E       No relevant answer.

7.      NO.

8.      No final decision has been taken with regard to this matter as yet.

9.      Will be made available when a final decision is taken in this regard.

10.     Several Legal reference books from the Library , legal reference charts , and following books  : a) Federal Employment Laws by Amy DelPo & Lisa Guerin, b) Employment Law by V.H. Goldstein, J.D. c) Cases and Materials on Employment Discrimination by M. J. Zimmer, C.A. Sullivan, R.F. Richards & D.A. Calloway , and other books.

If any of the information provided is a matter of Privilege, then the Consul for the Defendants is advised not to use that information , as that would violate the rights of the Plaintiff. Furthermore, the Plaintiff reserves the right to supplement these responses as additional relevant material becomes available.

*I have answered these Interrogatories under oath.*

Dated: New York, NY
        December 9, 2002.

Patrick F. D'Cunha.
PATRICK F. D'CUNHA.
137-22 LABURNUM AVENUE
FLUSHING, NY 11355.
(718) 661 2979

24.2

2.

Exh "B"

# U.S. District Court
## Eastern District of New York (Brooklyn)
### CIVIL DOCKET FOR CASE #: 1:02-cv-04157-CRW-LB
#### Internal Use Only

D'Cunha v. Genovese/Eckerd Corporation (FB)
Assigned to: Visiting Judge VJ, Charles R. Wolle
Referred to: Magistrate Judge Lois Bloom
Demand: $0
Cause: 29:621 Job Discrimination (Age)

Date Filed: 07/23/2002
Jury Demand: Plaintiff
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**Patrick D'Cunha**                             represented by **Patrick D'Cunha**
137-22 Laburnum Avenue
Flushing, NY 11355
718-661-2979
Email: dragondcunha@aol.com
PRO SE

V.

**Defendant**

**Genovese/Eckerd Corporation**               represented by **James Bucci**
Genova Burns & Vernola
2 Riverside Drive, Suite 502
Camden, NJ 08103
856-968-0680
Fax: 856-968-0685
Email: jbucci@gbvlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shirin W. Saks**
Genova, Burns & Vernoia
354 Eisenhower Parkway
Eisenhower Plaza Ii
Livingston, NJ 07039
973-533-0777
Fax: 973-533-1112
Email: ssaks@gbvlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gregory S. Hyman**
Spector Gadon & Rosen, P.C.
Seven Penn Center,

| | | |
|---|---|---|
| 10/23/2007 | 83 | RESPONSE in Opposition re 79 MOTION for Protective Order filed by Genovese/Eckerd Corporation. (Attachments: # 1) (Saks, Shirin) (Entered: 10/23/2007) |
| 10/23/2007 | 84 | ORDER: Plaintiff's 79 request for a protective order is denied. The Court has already ordered plaintiff to supplement his discovery responses regarding his claim for damages. Defendant has also been granted permission to re-depose plaintiff regarding his employment and medical histories. Plaintiff is ordered to comply with the Court's Order and cooperate with defendant in scheduling his deposition and filing the joint pre-trial order by 12/15/2007. There is no basis for plaintiff's 80 request for sanctions. Accordingly, plaintiff's request for sanctions is denied. So Ordered. (Ordered by Judge Lois Bloom, on 10/23/2007) C/M. Motions 79 , 80 terminated. (Latka-Mucha, Wieslawa) (Entered: 10/24/2007) |
| 10/24/2007 | 85 | MOTION for Sanctions by Patrick D'Cunha. (Bucci, James) Additional attachment(s) added on 10/29/2007 (Latka-Mucha, Wieslawa). (Entered: 10/24/2007) |
| 10/24/2007 | 86 | RESPONSE in Opposition re 85 MOTION for Sanctions filed by Genovese/Eckerd Corporation. (Bucci, James) (Entered: 10/24/2007) |
| 10/25/2007 | 87 | ORDER endorsed on doc.# 85 : I write to assure Mr. D'Cunha that defendant's counsel's filing of plaintiff's motion papers electronically in no way harmed plaintiff and was performed as a courtesy. Plaintiff and defendant's counsel have to STOP writing these sniping letters to the Court. This letter will not help Mr. D'Cunha's case. His request for sanctions is DENIED. So Ordered. (Ordered by Judge Lois Bloom, on 10/25/2007) C/M. (Motion 85 terminated) (Latka-Mucha, Wieslawa) (Entered: 10/26/2007) |
| 10/26/2007 | 88 | Letter dated 10/26/2007 from pro se Patrick D'Cunha to Judge Bloom, in response to James Bucci, Esq.'s 86 opposition papers dated 10/24/2007. (Fwd. to Judge Blooom) (Latka-Mucha, Wieslawa) (Entered: 10/29/2007) |
| 10/30/2007 | 89 | ORDER endorsed on doc.# 88 : Plaintiff's request for a conference is DENIED as unnecessary. The parties' joint pre-trial order is due 12/15/07. So Ordered. (Ordered by Judge Lois Bloom, on 10/30/2007) C/M. (Latka-Mucha, Wieslawa) (Entered: 11/02/2007) |
| 11/01/2007 | 90 | Letter dated 10/31/2007 from pro se Patrick D'Cunha to Judge Bloom, requesting "not to allow the Defendants to move ahead with the Videotaped deposition of Mr. Colaizzi Jr." etc. W/Attachments. (Fwd. to Judge Bloom) (Latka-Mucha, Wieslawa) (Entered: 11/02/2007) |
| 11/05/2007 | 91 | Letter *in opp to Plaintiff's 10/31/07 letter re videotaping of Colaizzi dep* by Genovese/Eckerd Corporation (Saks, Shirin) (Entered: 11/05/2007) |
| 11/06/2007 | 92 | ORDER endorsed on doc.# 90 (2nd page): The application is denied. See Fed. R. Civ. P. 30(b)(2) ("The party taking the deposition shall state in the notice the method by which the testimony shall be recorded. Unless the Court order otherwise, it may be by sound, sound and visual, or |

Case 1:02-cv-04157-CRW-LB   Document 159   Filed 10/07/09   Page 7 of 18

*Exh. " C "*

**From:** James Bucci <jbucci@gbvlaw.com>
**To:** dragondcunha@aol.com
**Subject:** RE: D'CUNHA V. ECKERD, deposition of NYHQ physician and Walgreens Rule 30(b)(6)rep.; Plaintiff wants to be present.
**Date:** Wed, 10 Oct 2007 9:28 am

Mr. D'Cunha:

Concerning the depositions of physicians, in my experience their available time to be deposed is limited, and accommodations must be made for them, especially concerning the date, time and location of the deposition. I will keep you informed, and will send you all documents received in response to the subpoenas.

Jim Bucci

*James Bucci, Esq.*
Tel: 856 968-0686
Fax: 856 968-0685

**From:** dragondcunha@aol.com [mailto:dragondcunha@aol.com]
**Sent:** Wednesday, October 10, 2007 1:35 AM
**To:** James Bucci
**Cc:** DRAGONDCUNHA@aol.com
**Subject:** D'CUNHA V. ECKERD, deposition of NYHQ physician and Walgreens Rule 30(b)(6)rep.; Plaintiff wants to be present.

Dear Mr. Bucci:

As the court has granted your request, to Depose my treating Physician when I had the heart attack, and to depose Walgreens' Rule 30(b)(6) representative, I request that I want to be present during those depositions as is my right, as you will be collecting information about my health and about my former job. Please inform me about the said dates that are convenient to these individuals so that I can inform you which days would be convenient to both parties. Any location in Manhattan would be suitable for me. Additionally, I request that you send me copy of each of the subpoenaed document packets you receive from Walgreens ( both, my employment records and my prescription profiles) and the documents you receive from New York Hospital Medical Center of Queens, (MY Medical Records).

Thank you for your cooperation. Have you checked the websites of other law firms lately, regarding news of this case and its prospects, I thought you might want to check it out.

Sincerely,

Patrick D'cunha

Email and AIM finally together. You've gotta check out free AOL Mail!

***Notice***

This e-mail (including all attachments) is intended for the exclusive use of the individual to whom it is addressed. This e-mail may be proprietary, confidential, privileged and exempt from disclosure under applicable law. If the reader of this e-mail is not the intended recipient or agent responsible for delivering the message to the intended recipient, the reader is hereby put on notice that any use, dissemination, distribution or copying of this

Exh. "D'

Patrick F. D'Cunha

339

1          UNITED STATES DISTRICT COURT

2         EASTERN DISTRICT OF NEW YORK

3

4    PATRICK F. D'CUNHA,            )
                                    )
5              Plaintiff,           )
                                    )
6              vs.                  ) No. 02-CV-4157
                                    )      (FB)(LB)
7    GENOVESE/ECKERD CORPORATION,   )
                                    )
8              Defendant.           )
     ---------------------------)

9

10

11

12    CONTINUED DEPOSITION OF PATRICK F. D'CUNHA

13           New York, New York

14       Thursday, November 29, 2007

15

16

17

18

19

20

21

22

23   Reported by:

24   Maria A. Bermudez

25   JOB NO. 199162

ESQUIRE DEPOSITION SERVICES, LLC.
1-800-944-9454

Plaintiff's Trial Exhibit. 42

Patrick F. D'Cunha

520

1  well, including the interest on if I were to
2  get that salary. That money would be working
3  somewhere for me, including a bank or some
4  financial investment, maybe investment in
5  another house or something like that. So,
6  that interest or appreciation of that
7  investment is also a loss to me, sir.
8      Q. Any other financial damages other
9  than those?
10     A. As I said, I don't have it off the
11 top of my head, but whatever other additional
12 benefits that Eckerd offered at that time for
13 the position, those.
14     THE WITNESS: Can I just --
15     MR. BUCCI: Go ahead, sir.
16     THE WITNESS: I would like to -- I
17 think I had earlier requested it. If
18 not, can I still request -- and I think
19 it would help the process of the
20 trial -- to please produce the salary at
21 Eckerd's, nothing else, on Ms. Babeu,
22 because that's the only person who was
23 hired where I was refused, including her
24 present salary and her initial salary
25 when she was hired in 2002. That would

521

1  help the calculation of any back wages.
2      Can you please do that --
3      MR. BUCCI: Sir, this isn't the
4  time for that, but if you want to send
5  me a letter, I'll review it at that time
6  and get back to you --
7      THE WITNESS: Could you please do
8  that?
9      MR. BUCCI: Put it --
10     THE WITNESS: Can I also state it
11 here?
12     MR. BUCCI: You stated it here, but
13 if you send me a letter --
14     THE WITNESS: Yes, but I would
15 also --
16     MR. BUCCI: I understand you just
17 did it here, but I'm saying I can't
18 respond until you send it to me in
19 writing.
20     THE WITNESS: Yes, I understand.
21     Q. Is it your claim that beyond your
22 initial date of when you were deposed in
23 March of 2003, that you experienced any
24 nonmonetary losses, such as emotional
25 distress or any other loss of that nature?

522

1      A. Okay, sir. Sorry about that.
2      MR. BUCCI: Can you just read back
3  the question, please.
4      (Record read.)
5      A. Yes, sir.
6      Q. Can you explain what they are,
7  please?
8      A. Okay. Beginning with -- let's take
9  the experience of heart attack I had. I was
10 rejected in July -- I think it was the last
11 week of July 2003 -- by -- for the third time
12 by Eckerd Corporation. Already the first two
13 rejections had given me a sense of
14 hopelessness, kind of a deep, deep sense of
15 loss of dignity and all that, and there was
16 that accumulated stacked up stress. To add
17 to that, when this thing happened, I was not
18 conscious, but I am very sure I was very much
19 aware of what had happened, and I used to be
20 so much -- I used to be so much bitter. I
21 couldn't face my children. I couldn't face
22 my children. I couldn't go out to relatives,
23 friends. I even tried to hide things from
24 those who knew, including trying to say yes,
25 I'm working somewhere else. It was so

523

1  shameful, so humiliating.
2      Ultimately, in 2003, September, I
3  believe, 14th of September, when I was
4  reading a small prayer booklet, I had this
5  heavy squeezing in my heart, a severe kind of
6  heaviness in my chest, and I knew from what I
7  knew from my studies as a pharmacist that I
8  was experiencing a heart attack. I was
9  shaken.
10     My wife was at home because she
11 works -- also, she used to work at night, and
12 my first reaction was not to tell her because
13 she will get scared, because I know she'll be
14 terribly scared if she heard something like
15 this; but, again, I thought if I didn't tell
16 her and suppose something happens to me,
17 which is what I thought was happening, that
18 would be even worse. So, I slowly signaled
19 to my wife, called her and I told her -- I
20 told her don't -- I said don't be scared, but
21 I'm just having -- I'm experiencing this.
22 So, I just held her hand, and then we called
23 the 911.
24     While they were still on their way,
25 I experienced it for one more time, the same

47 (Pages 520 to 523)

Patrick F. D'Cunha

528

1    _    Here's the question. I'll state it
2    again. Do you recall when it was that you
3    were taken to the hospital?
4        A.  I believe it was on or about
5    September 14, 2003, but --
6        Q.  Were you diagnosed with anything?
7    Were you given a diagnosis?
8        A.  I don't know. I have to see all
9    those records, sir. I know one thing, that
10   when I was taken by the ambulance to the
11   hospital, I was first given nitroglycerin
12   sublingual. That's a medication that helps
13   breathe for the person. It's normally given
14   to people who have heart attack. I was also
15   later administered heparin IV. I was also
16   given additional other medications, like
17   Lipitor and Metoprolol, that are usually
18   given to people who are --
19       Q.  Sir, what is it that you're
20   claiming was the reason that you had this
21   condition or these pains?
22       A.  Considering the fact that I had
23   practically no risk factors, neither in my
24   lifestyle, nor in my past history, I
25   definitely believed it was chronic stress,

529

1    and mainly the chronic stress from not one,
2    not two, but three rejections by Eckerd
3    Corporation, despite the fact that I was
4    qualified, despite the fact that they had
5    positions. That is the reason I had this
6    experience of heart attack.
7            There are studies -- I have bundles
8    of them, and these are authoritative studies
9    from both American Psychological Association,
10   the Web med, and Medline and all, which I'm
11   going to request to the judge, the trial
12   judge, to accept -- to make a judicial --
13   take judicial notice of, which I'm going to
14   introduce as authoritative studies, which
15   show that chronic stress and heart attack --
16   there is a clear link.
17           In fact, as recently as September
18   of 2007, there is a big article, which I
19   bought online just two nights ago, for $30,
20   which clearly states the connection between
21   chronic stress and heart -- risks of heart
22   attacks.
23       Q.  Is it your contention that you've
24   had chronic stress, sir?
25       A.  It is because of the Eckerd

530

1    rejections, sir. Yes, sir.
2        Q.  So, you're saying this chronic
3    stress started when?
4        A.  First of all, I want to clarify.
5    Chronic stress is not something that started
6    from that, meaning I had stress and it is
7    called chronic because it has been there for
8    a longer duration and that's what --
9        Q.  When did this stress start, sir?
10       A.  After on or about the first
11   rejection by Eckerd Corporation, August of
12   2001, and -- but I became aware of it a
13   little later, and probably lot more conscious
14   of it -- I became more conscious of it after
15   my second rejection in February 2002, because
16   between August and February I still had hope
17   because I wanted to try again with the higher
18   authorities of Eckerd Corporation. That's
19   why I contacted Ms. Dolan, and I asked her,
20   and I pressed on it and, therefore, they
21   called me for the second interview. But
22   after second interview, the second rejection
23   really gave me -- it was like a big shocking
24   experience and that's when that really
25   started setting in me, the so-called chronic

531

1    stress. It became even worse after the third
2    rejection by Eckerd Corporation for similar
3    reasons -- for same reasons.
4        Q.  Did you ever have any history of
5    heart attacks in your family?
6        A.  I think they produced something
7    from the hospital saying that my dad died of
8    heart attack. I don't know if I said that,
9    but there is no evidence whatsoever, no
10   documentary evidence that my dad died of
11   heart attack, so -- period. It is true my
12   dad died suddenly, but it may have been brain
13   hemorrhage. It's not necessarily heart
14   attack.
15           Secondly, my dad died at the age of
16   69. That's pretty old. So, old age itself
17   is good enough reason for him to have died at
18   that age, 69. In India, at that time, to
19   have lived 69 years with those conditions,
20   was pretty good.
21       Q.  Did you tell --
22       A.  My mother died at the age of 74.
23   My two brothers, who are presently living,
24   one is 75 and the other one is 73, I believe,
25   and my one sister is 71 probably. So, people

49 (Pages 528 to 531)

Patrick F. D'Cunha

540

1 echocardiogram was okay, I wouldn't need any
2 stress test. But I believe it is clear
3 echocardiogram was not okay; therefore, I was
4 put in for this stress test.
5     During that time, after this
6 echocardiogram, I didn't get chance to meet
7 Dr. Arora because after that he had left the
8 clinic. So, during the stress test, which
9 Dr. Arora himself performed, he told me -- I
10 mean, these are his words, "We don't have a
11 problem and it's not completely okay either,"
12 meaning there is some problem. I asked him
13 what, and then he said when I do kind of
14 severe exercise, then the peripheral -- the
15 ending part of my heart is not able to get
16 enough oxygen and blood supply. He said if
17 you go on like this, I'll put you on these
18 medications; if there is a problem or if you
19 do have any chest pain, then we could
20 consider surgery.
21     Q. So, is this the first time any
22 physician has identified or attempted to
23 diagnose you with a problem with your heart?
24     A. I believe, yes, and I believe it
25 would have been earlier if my previous

541

1 physician, whom I had asked to take all these
2 detailed tests, which he failed to do.
3 That's another reason why I switched from
4 him, because he was not doing --
5     Q. And by this, I'm referring to the
6 2007 by Dr. Arora, November 2007.
7     A. Yes, sir.
8     Q. Have you ever smoked cigarettes in
9 your life, sir?
10     A. Never did.
11     Q. How about alcohol? You ever drink
12 alcohol?
13     A. My drinking is like a -- you could
14 say like a mini baby type, once in maybe
15 sometimes several months. So, as a rule, you
16 could say no.
17     Q. From the date of when you went into
18 the hospital -- you said it was in the fall
19 of '03 -- have you had any other stressful
20 events in your life since that time?
21     A. Since when again?
22     Q. Since September of 2003, when you
23 went to the hospital. Since that date, have
24 you had any other stressful events in your
25 life?

542

1     A. Stressful events in the sense I do
2 continuously keep getting, which I stated
3 earlier, a kind of severe pain at the back of
4 my head and my neck, and which I did once --
5 I don't know if it's a neurologist -- I don't
6 know. I have never brought it up with a
7 physician, but I keep doing everything else I
8 could to kind of reduce it.
9     I've learned that there are certain
10 stress-reducing exercises and there are
11 certain other things, which I keep doing,
12 including yoga, which they say helps, and I
13 keep doing that.
14     No serious events, stressful
15 events, other than that heart attack, but
16 once in a while I do get little pain in my
17 head and the chest once in a while, but I
18 have -- my doctor presently is on vacation,
19 and I think he will come probably sometime
20 end of December. That time he has scheduled
21 another visit for me to check my blood levels
22 because he wants to see if my present
23 medications are working or not; otherwise, he
24 may have to adjust the therapy.
25     Q. Sir, did you suffer any stress as a

543

1 result of or in connection with your
2 employment and the separation of your
3 employment from Walgreens in 2005?
4     A. There may have been certain amount,
5 but I believe -- there may have been a
6 certain amount, but I still look back at it
7 as probably who knows. They were also trying
8 to -- as I said, retaliation is not only for
9 what I complained about John Colaizzi, but
10 also their knowledge of the fact that I had
11 sued Eckerd Corporation. So, corporations
12 are afraid that somebody is going to sue them
13 again. So, probably retaliation --
14     Q. So, did you suffer stress as a
15 result of your employment and the separation
16 of your employment from Walgreens?
17     A. Maybe some additional stress, yes.
18     Q. How would you compare that stress
19 to the stress that you claim you suffered
20 from Eckerd? How would you compare --
21     A. I may have felt less stress with
22 Walgreens, probably because there is certain
23 human elements which looks at the fact that
24 this is a company which at least gave me some
25 chance, if not total full chance, at an

52 (Pages 540 to 543)

Patrick F. D'Cunha

544

1  opportunity to have that employment and on my
2  living and provide for my family, at least
3  something. They did something, which Eckerd
4  did nothing, not once, not twice, but three
5  times.
6      Q.  Have you suffered any other
7  nonmonetary damages, other than what you've
8  already explained to me?
9      A.  Yes. Like what I stated in my --
10  in the answers to the additional
11  interrogatories that you sent me. The loss
12  of peace of mind is a big thing to lose. The
13  sense of deep, deep humiliation and loss of
14  dignity is a huge thing to happen to a human
15  being. The loss of the quality of life as an
16  ordinary human being -- because you can't
17  enjoy the regular pleasures of life which
18  every human being should have, go out on a
19  walk with your wife, with your children, with
20  your family, go and enjoy movies. Even now I
21  cannot -- finally this time I have agreed --
22  I told my kids -- I promised them for
23  Christmas vacation, at least one day, I will
24  go out with them, enjoy an outside meal and
25  watch movies. I have agreed to that, despite

545

1  the fact that my inside feels so useless,
2  feels so lacking in dignity that was deprived
3  to me by Eckerd Corporation.
4      Q.  Sir, were you in the hospital in
5  the summer of 2006 for -- you had a nail in
6  your foot; is that right?
7      A.  I think, yes, maybe some nail -- I
8  think I was doing some work in the basement
9  and some nail hurt me in my foot.
10      Q.  What construction work have you
11  done in your house since you bought it? You
12  were doing work in the summer of '06. What
13  was the work that you were doing then?
14      A.  I don't see any relevance of that,
15  sir.
16      Q.  It's just --
17      A.  No, I don't see -- there's no
18  relevance to that.
19      Q.  Has your family invested money into
20  the house since you bought it?
21      A.  We took -- in fact, as a matter of
22  fact, I -- yes, that way we did try to kind
23  of upgrade my house like -- yes, we did some
24  little minor things, not too much at a time
25  because we couldn't afford the money. So,

546

1  with whatever we could save, we did try to
2  renovate my house in smaller steps.
3  Recently, I just got an approval and a
4  loan -- I took additional home equity loan in
5  order to finance my daughter's -- my oldest
6  daughter, who is first year pharm-B student
7  at Long Island University, Brooklyn campus,
8  and since her expenses annually is like
9  35,000 plus, $35,000, maybe more. My second
10  daughter is due to join her next year. So,
11  in order to have some financial backing, I
12  took this $30,000 loan, home equity loan, my
13  second home equity loan, as some safety
14  measure so that we don't have serious
15  problems trying to finance this thing, and
16  hoping that, you know, things will kind of
17  improve from there on.
18      Q.  Sir, since March of 2003, when you
19  were last deposed, have you ever considered
20  going into a different line of work in order
21  to obtain employment?
22      A.  I never did, sir, because I
23  personally think, looking at the ads on the
24  computer and so on, it was -- I mean, this
25  is -- there could be no better time for

547

1  opportunities for pharmacists to get a job
2  than now, now and probably next decade,
3  because there is maximum demand for
4  pharmacists.
5      I know what these corporations are
6  doing. Right now, of course, they are
7  probably reacting to what happened, the
8  so-called -- the look of my resume, which
9  shows big gap, again, after working for
10  Walgreens just for about four months. So,
11  probably they are reacting to that.
12      Other than that, I know the
13  pharmacists, when they work -- and even
14  recently I joined the pharmacists for a
15  continuous education credit, which was
16  sponsored by Walgreens, and I joined that,
17  and what I find the issues, present-day
18  issues pharmacists are facing, I was at
19  level, if not better, than those pharmacists
20  who are working. We discussed several
21  issues, and I still feel -- I can't believe
22  that these corporations don't -- I mean, they
23  refuse people like me just because I'm old,
24  and I'm sure there is nothing else to that.
25      Q.  Sir, so given the abundance of jobs

53 (Pages 544 to 547)

Patrick F. D'Cunha

564

1  document I have requested, first
2  Dr. Epstein, your medical expert.
3      Additionally, I'm also making oral
4  request for your second transportation
5  expert about which I will shortly --
6      MR. BUCCI:  We've given you that
7  information.  You've asked for his name
8  and we've given it to you.
9      THE WITNESS:  I'll send you the
10 request officially, sir.
11     Once again, thank you very much for
12 all the documents you have produced.
13     Thank you.  That's it.
14     MR. BUCCI:  So, we're all done.
15     (Time noted:  3:28 p.m.)
16
17     _____
18     PATRICK F. D'CUNHA
19
20 Subscribed and sworn to before me
21 this     day of _____, 2007.
22
23 _____
24
25

565

1      CERTIFICATE
2  STATE OF NEW YORK   )
3            : ss.
4  COUNTY OF BRONX   )
5
6      I, MARIA A. BERMUDEZ, a Notary
7  Public within and for the State of New
8  York, do hereby certify:
9      That PATRICK F. D'CUNHA, the
10 witness whose deposition is hereinbefore
11 set forth, was duly sworn by me and that
12 such deposition is a true record of the
13 testimony given by the witness.
14     I further certify that I am not
15 related to any of the parties to this
16 action by blood or marriage, and that I
17 am in no way interested in the outcome
18 of this matter.
19     IN WITNESS WHEREOF, I have hereunto
20 set my hand this ___ day of _____,
21 2007.
22
23 _____
24     MARIA A. BERMUDEZ
25

566

1  ------------- I N D E X -------------
2  WITNESS      EXAMINATION BY    PAGE
3  PATRICK F. D'CUNHA   MR. BUCCI    342
4
5  ------------- EXHIBITS -------------
6  DEFENDANT'S              FOR ID.
7    20   2002 federal tax return    346
8    21   2003 state tax return    348
9    22   Plaintiff's supplemental   365
10        affidavit
11   23   Letter, 7/21/2003    385
12   24   Plaintiff's supplemental   387
13        responses to defendant's
14        interrogatories
15   25   Nine-Page computer    402
16        printout
17   26   2004 federal tax return   423
18   27   EEOC dismissal and    444
19        notice of rights
20   28   Document,        451
21        Bates No. WAL-ER 003
22   29   Letter, 6/7/2005    455
23   30   Pay stub       457
24   31   Two-page supervision    459
25        visit notes

567

1  DEFENDANT'S            FOR ID
2    32   Collection of e-mails    462
3    33   Letter, 8/15/2005    484
4    34   Eight-page letter,    485
5        8/16/2005
6    35   Two-page letter,    486
7        8/29/2005
8    36   Letter, 9/6/2005    488
9    37   Two-page letter, 9/6/2005   490
10   38   Disciplinary record    491
11   39   Two-page handwritten    492
12        letter, 10/11/2005
13   40   Letter, 10/26/2005    493
14   41   Three-page letter,    494
15        10/25/2005
16   42   2005 federal tax return   496
17   43   W-2s          498
18   44   Pharmacist and pharmacy   499
19        technician job board and
20        pharmacy career site
21        printout
22   45   Pharmacist and pharmacy   500
23        technician job board and
24        pharmacy career site
25        printout

58 (Pages 564 to 567)

# GENOVA, BURNS & VERNOIA | ATTORNEYS-AT-LAW

Exh. "E"

ANGELO J. GENOVA ◊+*
JAMES M. BURNS ◊
FRANCIS J. VERNOIA ◊
JOHN C. PETRELLA ◊
JAMES J. McGOVERN III ◊
LAURENCE D. LAUFER +
JEFFREY R. RICH ◊+
SANDRO POLLEDRI ◊o
KATHLEEN BARNETT EINHORN ◊+
CELIA S. BOSCO ◊†
BRIAN W. KRONICK ◊
JAMES BUCCI ◊*
PATRICK W. McGOVERN ◊+
PETER R. YAREM ◊

RALPH J. SALERNO ◊
WILLIAM F. HARRISON ◊
KEITH A. KRAUSS ◊*
DOUGLAS E. SOLOMON ◊+
HARRY G. KAPRALOS ◊+

COUNSEL

NORMAN J. PEER ◊+
GEORGE L. SCHNEIDER ◊+
GREGORY E. NAGY ◊
DAVID P. COOKE ◊+
DEBRA K. BAMPTON ◊+

OF COUNSEL

RONALD H. DeMARIA
(1939-2004)

HOLLIE B. KNOX *
DENA B. CALO ◊+
JENNIFER MAZAWEY ◊+
JOHN R. VREELAND ◊+
JENNIFER BOREK ◊+
SHIRIN SAKS ◊+
ANDREW P. ODDO ◊+
JASON L. SOBEL ◊+
DINA M. MASTELLONE ◊+
JOSEPH M. HANNON ◊+
TIMOTHY AVERELL ◊

REBECCA MOLL FREED ◊+
PETER J. CAMMARANO III ◊+
KENNETH B. GOODMAN ◊+
JISHA V. DYMOND ◊+
YAACOV BRISMAN ◊+
MICHAEL J. GROHS ◊+
NICHOLAS J. REPICI ◊*
CAROLYN BUCCERONE ◊*^
ALEXANDER L. D'JAMOOS ◊+
KRISTINA E. CHUBENKO ◊+

LISA A. JOHN ◊
RAJIV D. PARIKH ◊
GERI ALBIN ◊
LAUREN KOSTINAS ◊
EMILY J. WEXLER ◊+
LISA CHAPLAND ◊+
SHANNON A. MORALES ◊

MEMBER OF NEW JERSEY BAR   ◊
MEMBER OF NEW YORK BAR   +
MEMBER OF PENNSYLVANIA BAR *
MEMBER OF DISTRICT OF COLUMBIA^
CERTIFIED CIVIL TRIAL ATTORNEY ◊

December 12, 2007

**BY ELECTRONIC FILING**

Honorable Lois Bloom
United States District Court
  for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   **Patrick F. D'Cunha v. Eckerd Corporation**
>        **Civil Action No. 02-CV-4157**

Dear Magistrate Judge Bloom:

This firm represents Defendants, Genovese/Eckerd Corporation ("Defendants"), in the above-entitled action. Defendants and Plaintiff *Pro Se*, Patrick F. D'Cunha, jointly submit this correspondence respectfully seeking an extension of time to submit the Joint Pre-Trial Order in this action, currently due to be filed by December 15, 2007, in order for both parties to complete expert discovery and to allow Plaintiff additional time to prepare his objections to be included in the Joint Pre-Trial Order. Accordingly, the Parties respectfully seek a brief extension of time to submit the Joint Pre-Trial Order so that both parties may accomplish these goals.

Both Defendants and Plaintiff have been working diligently to conclude the additional discovery allowed by Your Honor, in your Order of October 4, 2007, and to prepare the Joint Pre-Trial Order. Defendants took the deposition of Plaintiff's subsequent employer's representative and held a continued deposition of Plaintiff. In addition, Defendants served three subpoenas, on Walgreens Corporation, Walgreens Pharmacy and the New York Hospital Medical Center of Queens ("NYHMCQ"), and obtained the production of additional relevant documents. At this juncture, the parties have otherwise completed the Joint Pre-Trial Order

# GENOVA, BURNS & VERNOIA | ATTORNEYS·AT·LAW

Honorable Lois Bloom
December 12, 2007
Page 2

with the exception of exhibits relating to Defendants' experts and Plaintiff's evidentiary objections.

However, Defendants' ability to provide their cardiology expert with relevant documents, including Plaintiff's medical records and a transcript of his continued deposition, was delayed until Defendants received the relevant documents, pursuant to its subpoenas, and held the continued deposition of the Plaintiff. To this end, Defendants served a medical records subpoena on the NYHMCQ on September 24, 2007, but the NYHMCQ did not provide responsive documents to Defendants until approximately November 6, 2007. Additionally, the parties were unable to arrange Plaintiff's deposition until November 29, 2007.

After deposing Plaintiff, Defendants forwarded relevant material to their cardiology expert but then learned, on December 7, 2007, that the expert was leaving for vacation that day and not expected to return until after the new year. Hence, Defendants will not be able to provide Plaintiff with their cardiology expert's report until early January 2008. Plaintiff submits that he needs additional time to review Defendants' expert disclosures and to take the depositions of Defendants' experts. In addition, an issue has arisen with respect to the authentication of Plaintiff's medical records, and Plaintiff intends to depose the records' custodian. Finally, Defendants sent a draft of the Joint Pre-Trial Order to Plaintiff, but Plaintiff requests additional time to prepare his objections to Defendants' exhibits, witnesses and deposition designations contained in the Joint Pre-Trial Order.

Finally, it is Defendants' understanding that no judge has yet been assigned to this matter. Thus, any extension of time should work no inconvenience to the Court's calendar. Accordingly, Defendants and Plaintiff jointly respectfully request this Court to extend the date on which Defendants are to file the Joint Pre-Trial Order in this action to January 31, 2008 in order to allow the parties to complete expert discovery, to allow Plaintiff to take Defendants' experts' depositions and to allow Plaintiff additional time to assert his objections to the Joint Pre-Trial Order.

Respectfully submitted,

**GENOVA, BURNS & VERNOIA**

Shirin Saks

c:     Patrick F. D'Cunha (via U.S. mail and e-mail)
       James Bucci, Esq.
2002\002\Letter\Ltr to Judge Bloom 121207-2.doc

BRIAN W. KRONICK 0
JAMES BUCCI 0*
PATRICK V. McGOMBER 0
PETER R. YAREM 0
WILLIAM R. HARRISON 0
DOUGLAS E. SOLOMON 0+

NORMAN J. PEER 0+
GEORGE L. SCHNEIDER 0+
GREGORY E. MAGW
DAVID P. COOKE 0+

OF COUNSEL.

MEMBER OF NEW JERSEY BAR ●
MEMBER OF NEW YORK BAR ◆
MEMBER OF PENNSYLVANIA BAR ■
MEMBER OF DISTRICT OF COLUMBIA ●
CERTIFIED CIVIL TRIAL ATTORNEY ○
CERTIFIED CRIMINAL TRIAL ATTORNEY +

October 1, 2009

**BY REGULAR & ELECTRONIC MAIL**

Mr. Patrick F. D'Cunha
137-22 Laburnum Avenue
Flushing, NY 11355

> **Re:  Patrick F. D'Cunha v. Eckerd Corporation, et al.**
>       **Civil Action No. 02-CV-4157**

Dear Mr. D'Cunha:

Defendants, Eckerd Corporation, The Jean Coutu Group (PJC), Inc., The Jean Coutu Group (PJC) U.S.A., Inc. and Rite Aid Corporation (collectively, "Defendants"), are in receipt of your e-mail correspondence, dated September 21, 2009, in which you state that you will not participate in any further discovery in this matter until, at a minimum, Defendants' motion to dismiss is resolved by the Court. However, notwithstanding your objection, because trial in this matter is scheduled for December 7, 2009 and Defendants must accordingly protect their rights, Defendants intend to move ahead with discovery.

By Defendants' correspondence of September 21, 2009, Defendants requested that you provide (1) date(s) for your deposition; (2) date(s) for the depositions of witnesses you have identified as having knowledge of your emotional distress (Agnes D'Cunha, Olivia D'Cunha, Crystal D'Cunha and Stacy D'Cunha); and (3) date(s) you will make yourself available to undergo independent medical examinations with Defendants' medical expert, Dr. Stanley Epstein, and a psychological expert Defendants intend to retain. In addition, Defendants asked you to execute a HIPAA release form directed to your treating physician, Dr. Jodh Arora, and to identify any other medical providers you have consulted.

This is Defendants' second request for the aforementioned information. Accordingly, enclosed please find a Notice of Deposition seeking your deposition on October 22, 2009,

Mr. Patrick F. D'Cunha
October 1, 2009
Page 2

commencing at 10:30 a.m. at the offices of Genova, Burns & Vernoia, located at 494 Broad Street, Newark, N.J. 07102. In addition, pursuant to Rule 45(b)(1) of the Federal Rules of Civil Procedure, enclosed is a draft of the subpoena Defendants intend to serve upon Dr. Arora, drafts of deposition subpoenas Defendants intend to serve on Agnes D'Cunha, Olivia D'Cunha, Crystal D'Cunha and Stacy D'Cunha and another copy of the HIPAA release form to Dr. Arora, which Defendants expect you to execute and return as soon as possible. If Olivia D'Cunha, Crystal D'Cunha and Stacy D'Cunha no longer reside at your address, please provide Defendants with their last known address[es]. Please let us know if they and your wife are agreeable to accepting service of the subpoenas via mail to you, or whether they require personal service.

Finally, we will provide you with dates for your independent medical examinations. If there are any dates in October when you are not available, please let me know immediately.

In the event you maintain your objection to participating in discovery in this matter, Defendants may seek the Court's intervention by way of a motion to compel discovery. If we do not receive the signed HIPAA authorization from you by Thursday, October 8th, we will be forced to file a motion.

Thank you for your attention to this matter.

Very truly yours,

GENOVA, BURNS & VERNOIA

Shirin W. Saks

SWS:ga
Enclosures

c:      John McNamara, Esq.
        James Bucci, Esq.

\us5\2002\002\letter\ltr to d'cunha 100109

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

PATRICK F. D'CUNHA,

        Plaintiff,

       v.

ECKERD CORPORATION, and its parent
Companies: Brooks Eckerd drugstore chain,
J.C. Penney, JCG (PJC) USA, LLC ("Jean Coutu
USA"), Jean Coutu Group (PJC) Inc. and Rite Aid
Corporation (publicly held corporations),

        Defendants.

-------------------------------------------------------X

CIVIL ACTION NO.:
02-CV-4157(FB)(LB)

**NOTICE OF DEPOSITION**

        Pursuant to Rule 30 of the Federal Rules of Civil Procedure, Defendants will take the deposition upon oral and video examination of Patrick F. D'Cunha, 137-22 Laburnum Avenue, Flushing, NY 11355, in connection with the above-captioned case, at the offices of Genova, Burns & Vernoia, 494 Broad Street, Newark, New Jersey, on Thursday, October 22, 2009, at 10:30 a.m.

Dated:      Newark, New Jersey
           October 1, 2009

                          **GENOVA, BURNS & VERNOIA**
                          Attorneys for Defendants,
                          Eckerd Corporation, The Jean Coutu Group (PJC), Inc.,
                          The Jean Coutu Group (PJC) U.S.A., Inc. and Rite Aid
                          Corporation

      By:                      
                          Shirin W. Saks
                          494 Broad Street
                          Newark, New Jersey 07102
                          Tel: (973) 533-0777
                          Fax: (973) 533-1112