ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
..............................................X

PATRICK F. D'CUNHA

Plaintiff
v.

ECKERD CORPORATION
Defendant,
..............................................X

**Civil Action No.**
02-cv-4157(CRW) (LB)



# REPLY BRIEF OF PLAINTIFF IN FURTHER SUPPORT

# OF MOTION FOR JUDGMENT, NOT WITHSTANDING

# JURY'S VERDICT, RULE (50)

# IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL

# (RULE 59).

PATRICK F. D'CUNHA,
Plaintiff, Pro-Se
137-22 LABURNUM AVENUE,
FLUSHING, NY 11355
(718) 661 2979
Email: dragondcunha@aol.com

# COUNTER STATEMENTS OF FACTS

## Eckerd failed to show there was sufficient evidence at trial to support a jury verdict in Eckerd's favor.

("In a disparate treatment case . . . a plaintiff must produce sufficient evidence to rebut a showing by the employer that there was a legitimate, non-discriminatory reason for [differentially treating] a particular employee.").
In the case at bar, the employee Eckerd differentially treated that took away Plaitiff's job is Babeu(42) after D'Cunha(50) was rejected second time. Stern (47) was just a cover up and a reasonable jury would not believe the offer of an entry level staff, floater position to Stern with MBA in business administration and 25 years of managerial experience and currently (at that time) a manager with CVS a # 1 drug store chain in the U.S.A. Offer to Stern is incredible, and additionally, the job plaintiff applied for did not ask for experience at all. All other pharmacists hired by Tran, from states other than New Jersey are Not relevant comparators.

As an initial matter, Eckerd brief totally ignored the Stipulations(**Trial Tr. Dec. 7, 2009: 75-81)** and Tran and Dolan's trial admissions, as stated in Plaintiff's main brief. However, a reasonable jury will **not** ignore the proven facts (Stipulations) as well as the admissions by material witnesses. These need no further testimony, as they are proven facts.

**Trial transcript ("Tr.") 109: 2-20** Unfairly prejudicial Colaizzi Jr.'s deposition testimony allowed by court, despite Plaintiff's insistence it will create a trial within a trial and confuse jury into thinking that Tran's reasons for rejecting D'Cunha were the same as Walgreens' reasons for discharging, even though Tran rejected D'Cunha in 2001 and 2002, but Walgreens discharged D'Cunha in 2005. **Abuse of Discretion by the Court.**

**ECKERD BRIEF 4-5, Trial: 236-38 and 252-53:**
**There is no evidence whatsoever that hiring D'Cunha would have been unsafe for patients, that he did not know how to fill or mix prescription medications, that he was not on time for job and all the innuendos, allegedly presumed by Bucci, which is speculation and conjecture at best. See the second part of Colaizzi Jr. Deposition, where he back tracks most of those assertions, or is Not credible, at all. Colaizzi also admits even he made mistakes, plaintiff witnessed a serious mistake Colaizzi Jr. had made, additionally Colaizzi Jr. also admitted Pharmacists at Walgreens always asked help when they did not know something. There were alleged problems at job, unsupported by any evidence from Wlagreens, that D'Cunha's performance was substandard.**

Presuming arguendo, that these baseless allegations were true, as of October 2005; still, no logical inferences can be made from 2005 performance of plaintiff, to evaluate his qualification for a job in 2001 and 2002, such inferences violate basic laws of logic.

**Tr. 17: 3- 9   If you have questions about anything that takes place, your first source of information will be Mary Gonzalez my deputy clerk. She might receive your question and want to ask me about how to respond to it, but either Mary or one of the court security officers here in the court house ... will assist you with information. [Abuse of Discretion, Not proper statement of the Law].** *Fairness of process requires the Jury to send a note to the Judge who then reads it out loud before the parties in the court. There was Not a single such Note read out loud, because Court gave wrong Instruction.*

Bucci never mentioned in his brief what happened reg. jury and witness payment. He asked plaintiff, just few days prior to the trial, are you going to pay for the jury and the witnesses? And plaintiff told him yes. Plaintiff believes the court is supposed to require parties to deposit some money, or ask them to promptly pay after trial, but wonder why parties were not informed. Did Eckerd pay them all, and how much? Did Bucci contact the jury members?

## PRIMA FACIE CASE OF AGE DISCRIMINATION

**Tr: 75:15 – 79: 5**      The 18 facts agreed upon as true by parties, the Stipulation Number Three (Exh. P53). These basically prove the basic elements of **Prima facie case of age discrimination**, along with the admissions of **Tran (Tr. 333 – 425) and Dolan(Tr. 242 – 295)** in their trial testimony.

**79: 8 – 81:9**    Of the pharmacists Tran hired for New Jersey, three of them, Nadina Powell, Brian Baldari and Jessica John were very young (in their twenties), and like Plaintiff D'Cunha these three also had zero experience as registered pharmacists, but Tran hired these significantly younger pharmacists but Not D'Cunha who was significantly older compared to them. Tran testified that he did hire them and they had zero experience as registered pharmacists.
See Tran's testimony on December 9, 2009. **Tr. 416: 7-17.**

**413: 8 – 416 :17**      Tran hired Nadina Powell, 28 year old, who had zero experience as a registered pharmacist, Brian Baldari 24 yr. old who had zero experience as a registered pharmacist, and Jessica John, 26 year old who also had zero experience as a registered pharmacist, but Tran did Not hire D'Cunha 49 and 50 at relevant times, who also had zero experience as a registered pharmacist. Why? Only because of D'Cunha's age, D'Cunha was significantly older than all of them, including Babeu (42) who was hired instead, for Sussex.

2

This undisputed evidence **along** with Dolan's admission that D'Cunha met the minimum qualification to be **hired** by Eckerd, <u>**clearly refutes Eckerd's assertion that D'Cunha was not qualified for the position he applied for.**</u> Also SEE:  Exh. P7, which **clearly** states to be considered for Non-Experienced pharmacist position with Eckerd, candidate needs Total Acceptable Ratings of 7 or higher, (D'Cunha received 7), **and** Total Unacceptable Ratings of 1 or lower (D'Cunha received 1) See: **Exh.** P7, page  6.

Additionally, the job D'Cunha applied for (in response to the mailer) did not require experience. See: Exh. P4.

Tr. 300-302        Plaintiff applied to Eckerd one more time in 2003, because he believed Eckerd, because they claimed plaintiff never made any more contacts, so plaintiff believed they were sincere and would offer him job, but they thwarted plaintiff's attempts to mitigate his damages as well. The **court Abused its discretion** by reprimanding Plaintiff for giving clear answer that barely took half a minute. However defendant witnesses were given full liberty to answer in detail, even when plaintiff asked for a yes or no answer, and objected to unnecessary details, sometimes prejudicial.

**Tr. 180 – 239  and 296 – 323**  The court prevents Plaintiff from explaining his answers and tells him to say just yes or no. **ABUSE OF DISCRETION, ERROR OF LAW.**

**However, Tran, Phraner, Kowalski, Dolan are given full freedom to explain fully their answers, over plaintiff's objections. See: Tran's trial testimony(Tr. 333 – 425) and  Dolan's testimony (Tr. 242 – 295).**

**Tr. 296 – 297:**        Judge Wolle, not only allowed Unfairly prejudicial Video deposition of Colaizzi Jr. to be played for 4 and half hours, **overruling Plaintiff's objections,** but also allowed it to be played out of sequence, at an exact time to make it look **like** Walgreens job of plaintiff occurred prior to August 2001 and February 2002 rejections of plaintiff. This Plaintiff believes was well planned by Bucci and **the** judge who knew the case very well, since several filings were made before Honorable Wolle, the court still allowed this great injustice to occur. *This video and the exact time to play it out of sequence, was a well hatched plan of Bucci and the Judge said, " That sounds like a good plan." This is Abuse of Discretion. <u>Was the court bending over backwards to help Eckerd?</u>* New Trial is appropriate on **this** ground.

Also See: Trial Tr. 12/09/09:  *334 – 373 and 409 – 417 Tran's testimony on direct and redirect by plaintiff D'Cunha.*

See: Tr. 419  Bucci added Mr. Ince  suddenly on trial day as a surprise which is violation of civil procedure. He exploited Pro-Se plaintiff's lack of knowledge of the process.  Mr. Ince could not testify as he did not work for Eckerd, but he was Rite Aid employee. This sudden change caused Unfair prejudice to

plaintiff, as he could not lay foundation to the business documents of Eckerd and could not get any information regarding the relationship between Rite Aid and Eckerd Abuse of Discretion by Judge not to have asked Bucci to file JPTO, and returned my copy at trial, Bucci refused to sign it despite Judge said to sign and submit, judge just ignored D'Cunha's request thereafter. FRE 403.

### Abuse of Discretion; 384 – 386
Judge allows Bucci Cross exam on issues Not covered in Direct. Court goes out of its way to help Eckerd.

### Further fraud by Bucci:  Tr. 388: 24 – 389 : 8
Bucci intentionally says six or eight positions, and says to me it does not matter. This is intentionally confusing the jury regarding a material element of case, a clear fraud.  Bucci does not dwell on these 8 positions but quickly moves on to non-relevant stuff.

### *Tran impeached*.  Tr. 334: 8 – 336: 17        Tran refuses to admit there were 8 full time pharmacists positions open in his district in New Jersey, as of August 23, 2001. Tran is then shown Exhibit D-10, specifically, bates stamped DEF – 26, Field Recruitment Bi-Weekly Activity Report, and Tran admits it is an Eckerd Business document, and further identifies each element of it. The document clearly states, as of August 23, 2001, there were 8 Full Time Pharmacist positions in Tran's district.

### TRAN FURTHER IMPEACHED:          Tr. 337:1 – 338:4

Tran denies plaintiff had told him, he was willing to work any shift, anyplace in New Jersey. Tran shown his deposition and then he admits the same.

### The Dilemma of Tran's belief that D'Cunha was not interested in Sussex Position: See: *Transcript 349 – 352*
No reasonable jury can logically reconcile Tran's alleged belief, with the two (2) admissions Tran makes at the trial, that:
1) It was none of his business how plaintiff(candidate) got to the job place, once a job was offered, and
2) Plaintiff (D'Cunha) had written on his job application that he was willing to work any shift, anywhere in New Jersey.
*Not just logical contradiction, but this also creates a psychological contradiction as well. Compact Oxford dictionary meaning of :  **belief is***

- **noun 1)** a feeling that something exists or is true, especially one without proof.

4

**2) a firmly held opinion.**

It is a psychological state of TRAN's mind that is involved here, and reasonable jury must consider whether these two admissions of Tran which jury must take as true, (coming from Tran himself at the trial). How is it even remotely possible that Tran could have also believed Plaintiff not interested in Sussex position, for whatever reason.

Reasonable jury would determine that either:

A) Tran would offer job to plaintiff saying, hey, this guy is willing to work **anywhere in New Jersey, so** let me offer him the job, as he is qualified. Or,

B) the jury would determine **as** it was none of his business, Tran would simply offer the job to plaintiff, and tell the plaintiff to get the details of the store location from Eckerd CSR or give Mr. Radice's phone number and be done with it. This is reasonable, since Tran said it is none of his concern how plaintiff gets to the store, once job offered.

Finally a reasonable jury would conclude, Tran is Not telling the truth, because *D'Cunha was in fact rejected twice ( August 2001 and again in February 2002), because of his age.*

**Brief: 6:**      *For argument sake, presuming Eckerd's assertion of six open positions in Tran's territory is true, Eckerd has still failed to explain just where did the 8 Full Time  Pharmacist open positions (DEF-26) in Tran's district disappear? This is what 2nd Circuit figured with the same Eckerd Business documents submitted at Appeal of grant of Summary judgment to Eckerd. Eckerd has simply rehashed the very same argument, it made before Judge Block, which it repeated before the Second Circuit court of appeals, and has repeated at trial in December 2009. Eckerd can not run away from this clear attempt to hide the truth, because D'Cunha was indeed rejected twice, because of his age.*

**Brief 7:**      Once again Eckerd is fraudulently claiming Plaintiff was 49 in
February 2002, when Tran interviewed him, despite the fact, *Stipulation Number Three, Exh. P53, at #15 and # 17* clearly states Plaintiff was 50 years old when he met Tran in February 2002. Bucci perpetrated the same fraud with Judge Block and the circuit court; but it did not work at the circuit court, as at the evidence was scrutinized heavily, and the circuit court did not get carried away with deceptive arguments of Bucci. See: **Tr. 229 – 230**

**ALL FRAUDULENT, MISLEADING AND FACTUALLY FALSE STATEMENTS OF BUCCI, ECKERD'S ATTORNEY, ( INCLUDING THE ASSERTION THAT D'CUNHA WAS 49 IN FEBRUARY 2002,DESPITE STIPULATING THAT D'CUNHA WAS 50, IN FEBRUARY 2002, WHEN HE MET TRAN) MUST BE STRIKEN OUT OF THE TRIAL RECORD AS A MATTER OF**

**LAW. This court must do this to show genuine discretionary control over the fairness of the Trial Process. See; Brief 7, and Stip. THREE, Exh. P53. Tr. 229 – 230**

**Brief 10:**    Eckerd has made illegitimate and false assertion of Tran hiring Lederman(61), Zablocki(58), Paar (46), Softy(44), Valkova(47),and Ahmed(49), as these pharmacists were Not hired by Tran in New Jersey, where D'Cunha applied for the job, so they are totally Wrong comparators. **Stipulation Number Two, Exh. P52,** is the appropriate exhibit for this comparison Bucci is trying to make.

Plaintiff only needs to show in this disparate treatment case, he was treated differently from pharmacists who were hired for the positions he was rejected for, that would be Stern and Babeu. Plaintiff has met that burden with preponderance of evidence. Eckerd failed to come up with a non-discriminatory reason for the rejections, as each of its reasons was proven to be a pretext to hide the fact, that D'Cunha rejected because of his age.  See: Tr: 75:15 – 79: 5 Prima facie case of age discrimination: (Tr. 333 – 425) and  Dolan(Tr. 242 – 295),  also See: Tr. 79: 8 – 81:9, Tr. 416: 7-17. and **413: 8 – 416 :17**

404:12 – 405:6    Tran did Not hire the above mentioned pharmacists in New Jersey, where plaintiff applied for job, hence they are Not proper comparators.
Q:    Where did you hire Mr. Lederman for?
A:    I hired him in New York.

Similarly, the document D-19 shows that:
 Paar was hired in PA,
Softy was hired in New York,
 Valkova was hired in NY,
Ahmed was hired in NY, and
Zablocki was hired in PA.

### Exh. D-19 MUST BE STRICKEN OUT OF TRIAL RECORD AS A MATTER OF LAW.

*Admission of Exhibit  D-19, Defendant's response to Interrogatories, was Abuse of Discretion, and the court showed a clear bias and went out of its way to help Eckerd, because when Plaintiff wanted to get his Responses to interrogatories, also as part of his Job search record in Exh. P20, court asked plaintiff to take it out, Plaintiff's interrogatories not admitted. This is erroneous ruling,D-19 caused Unfair prejudice to plaintiff, as it will lead to grave miscarriage of justice, Exhibit D-19 and all testimony related to it must be Stricken out of the Trial record.*

Plaintiff applied for a job with Eckerd in New Jersey. These individuals hired in other states, are Not at all relevant to why Tran rejected Plaintiff on two occasions, August 2001 and February 2002. Plaintiff's is claiming **age discrimination based on Disparate**

6

treatment. **Discrimination under this can be proven in several ways**: One way is to show that plaintiff was treated differently than Stern and Babeu who were offered jobs instead of D'Cunha. Plaintiff clearly met this burden.

## Abuse of Discretion by the court, to allow testimony regarding Lederman, Paar, Softy, Valkova, Ahmed and Zablocki who were not proper comparators in this case.

**404**:12- 407:16     Pharmacists Tran hired in other states allowed to be mentioned as statistical sample (too small and Not proper sample). Plaintiff applied for a position only in New Jersey. ABUSE OF DISCRETION

**409:6-10**     Tran did tell D'Cunha regarding how tough a job of a pharmacist is, about the rigors of the job.

**409:19 – 412:9**     Tran admitted he offered Stern a lower position than her managerial position in 2001, despite her great qualifications and 25 years of managerial experience.

Trial evidence showed that *Eckerd has totally failed to meet its burden that D'Cunha was not qualified for the position he applied for and that the reasons for his two rejections (in August 2001 and February 2002) were not pretextual but non-discriminatory.*

**Tr. 423- 425**     Despite plaintiff's insistent request, and citations of authorities, as well as the fact that **Willfulness** is a matter of fact for the jury to decide, the court takes that away from the jury. This is **Abuse of Discretion and Error of law.**

## Brief: 7

Bucci's fraudulent claim at trial on more than one occasion that D'Cunha was 49 when Tran interviewed him second time in Feb. 2002(**Dec. 8, trial Tr. 229**) is illegal, because Eckerd stipulated to D'Cunha being 50 at the time. See: **Stipulation Number Three, Exh. P53:**

at #15:     In February 2002, Mr. Tran met with plaintiff, who was then 50 years old, and spoke to him about his only open available position, which was in Susssex, New Jersey.

Stip No. Three, at # 17:          Plaintiff was 50 years old in February 2002.

7

This is clearly fraud, perpetrated on judge and the jury, additionally, the defense attorney continues to assert the same fraud in the hope, it will be successful once again.

**Brief 10:**     Eckerd's assertion that its reasons to reject D'Cunha were business reasons is false, as BFOQ has it's own definition as Plaintiff stated in his brief. Did Eckerd have open positions in August 2001? Yes, see Eckerd's business document **Exh.D-10, Field Recruitment Bi-Weekly Activity Report, marked DEF-26**. This document which was shown to Tran, clearly states as of 8/23/2001, there were 8 Full Time pharmacist open positions in Tran's district.  See: **Dec. 9, Trial Tr. 334-336**

*Tran refuses to admit there were 8 full time pharmacist positions open in his district as of 8/23/01, but the document shown to him is very clear and needs no explanation. Mr. Bucci brings in some other document that shows some part time positions but that does not explain where the 8 full time positions disappeared.* Eckerd tried this very same trick at summary judgment, but the circuit court rejected their arguments.

**Trial Tr. 319:**     <u>Tran never asked D'Cunha a single question on his past history, prior to 2001, not a single question was asked by him, no evidence of it anywhere.</u> Additionally, Tran admitted he only considered experience and where the candidate wanted to work and where Eckerd wanted them to work. Tran further admitted he did hire pharmacists with zero experience as registered pharmacist, because Eckerd did hire Non-experienced pharmacists, as Dolan also admitted, plus the Pharmacist Structured Interview Questionnaire, an Eckerd business document, Exh. P7 also clearly states requirements to be hired as non-experienced pharmacist with Eckerd.

**Tr. 413: 8 – 416 :17**     Tran hired three very young pharmacists in their twenties, who had zero experience,  for New Jersey, however, Tran rejected D'Cunha for a similar  position, saying he had no experience, because D'Cunha was significantly older than those three and Dolan(42) who was hired for Sussex in Feb. 2002. Tran's motive is crystal clear, D'Cunha (50) was too old for Eckerd. This clearly shows Tran's age bias, a jury would conclude.

*Tr. 409: 6 – 10:*   <u>*Yet another indication of **Tran's age bias** is the fact he told D'Cunha  about the rigors of the pharmacist job, something he would not tell younger candidates.*</u> ***A reasonable jury would see this clearly, that biased people believe older people lack energy and are slow to do work, lack adaptability etc.***

**Tr. 414-415:**       The judge allows Tran to answer with explanations, despite plaintiff's objections, but did not allow plaintiff same freedom.  Compare this to **Tr. 179: 5-10,** here plaintiff told "..just answer the question. Do not make an explanation." This is  **Abuse of Discretion.  Different standard for Eckerd and different for Plaintiff.** Court further prevents plaintiff from giving additional testimony in the case. Court declares plaintiff has rested and prevents further testimony. See: Tr. 420-421.

Tr. 421:20 - 25       Additionally, court gives hints to Bucci to make a motion for judgment as a matter of law and further says he can also renew it at end of all evidence. Judge did not give such clear suggestion to plaintiff, simply said you may make a record.

### Claim for Damages:

   It was an error of law, for the court to rush plaintiff, so as to not allow him time to testify in detail regarding his mitigation of damages. Plaintiff was also asked to tear off pages from Exh. P20, the documentary record of plaintiff's efforts to obtain employment, which court thought was too big.

   D'Cunha's background for considering his qualification for job with Eckerd is a valid point, however background of D'Cunha's Walgreens performance is Not a valid consideration for evaluating qualification of  Plaintiff for Eckerd Job in August, 2001 and Feb. 2002. Bucci made a deceptive presentation of Colaizzi Jr. Deposition, prior to Dolan and Tran's testimony and thus played a fraud on the jury, making it seem that Walgreens job performance( though false) was a fair consideration. The court also allowed this ploy to proceed.

Court allowed Full prejudicial question regarding Plaintiff's discrimination charge filing against Walgreens, to be asked, but did not Sustain Plaintiff's objection, and thus caused Plaintiff, un-repairable and Unfair prejudice, due to Confusion and bias created in minds of the jury. ***Trial Tr.* 306: 9-19. This was Abuse of Discretion.**

Finally, Plaintiff urges this court to consider plaintiff's filing in opposition to Eckerd's In Limine motion to deny Back wages to Plaintiff, or to prevent him from presenting any evidence of mitigation of damages, as the court Abused its Discretion in denying plaintiff a fair opportunity to present his evidence of reasonable attempts to get a job, which he documented in Exh. P20, which was not allowed in its entirety and caused further Unfair prejudice to plaintiff.

9

# ARGUMENT

Employee who proves minimal prima facie ADEA case is entitled to prevail as a matter of law, even without evidence that would support reasonable finding of discriminatory motivation, if employer fails to come forward with legitimate nondiscriminatory reason. *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2nd Cir. 2000).

It must be noted that 2nd Circuit has already ruled that Eckerd's assertion that it hired Babeu (42), after rejecting D'Cunha (50) means it did not discriminate, is illegitimate. Eckerd has not only stayed put on that assertion, but also fraudulently presented D'Cunha's age as 49 in February 2002. This combined with the fact D'Cunha has made his prima facie case (no experience was required, for the job plaintiff applied for, when he responded to Eckerd mailer), and presented proof that Eckerd's reasons were pretext to hide real reason for rejecting D'Cunha because of his age as plaintiff has shown in his initial brief, therefore it is incumbent upon this court, to grant JMOL to plaintiff not withstanding jury verdict, based on the Second Circuit authority cited above.

**Brief: 11 – 13**          See: **Sunward Corp. (10th Cir. 1987)** The line between reasonable inferences that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncracies. The line is drawn by the laws of logic.

Making inferences from trial evidence, **based on simple logic,** Eckerd produced No evidence to prove that Plaintiff was not qualified for staff (entry level, floater ) pharmacist position, and Absolutely No evidence of non-discriminatory reasons for rejecting D'Cunha twice. On the contrary, there is abundance of evidence that proves plaintiff's Prima Facie Case, and that Eckerd's reasons were pretexts to hide discrimination. On this basis, the verdict was indeed seriously erroneous and / or a miscarriage of justice.

Plaintiff wants to know what happened to the payments for the jury, and whether a record is kept, who usually is responsible for it. Was Bucci allowed to contact jury to make payments to them, as he wished?

### A.   Judgment as a Matter of Law in D'Cunha's favor must be Granted, As the Evidence Utterly Fails to Support Jury Verdict.

As required by **Rule 50 motion** for JMOL standard here in this case " ... the evidence is such that ... there can be but one conclusion as to the verdict that reasonable men could have reached." Sir Speedy, Inc. (2nd Cir. 1992).

Viewing the evidence most favorably to Eckerd, the trial evidence points so strongly in D'Cunha's favor, that reasonable men would come to but one conclusion that Eckerd's actions were motivated by age discrimination, and but for D'Cunha's age, Eckerd would have hired him. See: <u>LeBlanc-Sternberg,</u> 67 F.3d at 429 (2nd Cir. 1995). See: plaintiff's original brief.

This court must grant the judgment as a matter of law, as 1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture; See: <u>LeBlanc-Sternberg</u> (2nd Cir. 1995). See: plaintiff's original brief.

2) Additionally, there is such overwhelming amount of evidence in favor of the movant that reasonable and fair-minded people could not arrive at a verdict against the movant. See: <u>LeBlanc-Sternberg,</u> 67 F.3d at 429 (2nd Cir. 1995). See: plaintiff's original brief.

**B.    Rule 59 Motion for New Trial**: "A new trial may be granted ... when jury's verdict is against the weight of the evidence." <u>DLC Management Corp. v. Town of Hyde Park,</u> 163 F.3d 124, 133 (2nd Cir. 1998).

<u>The jury verdict was indeed a serious error and a miscarriage of justice.</u>

<u>Even if the court grants plaintiff, the judgment as a matter of law, Plaintiff requests that a New Trial be granted, based on the fact Eckerd's evidence was very weak, the Errors of law by court in its evidentiary rulings, and the process, and in fact plaintiff's evidence was overwhelming.</u>

Here below is EEOC guidance on proving Age Discrimination based on S. Ct. decision on

O' Connor :

### The U.S. Equal Employment Opportunity Commission

---

```
EEOC NOTICE
Number 915.002
Date 9-18-96

1.    SUBJECT: Enforcement Guidance on O'Connor v. Consolidated
Coin Caterers Corp.

2.    PURPOSE: This enforcement guidance analyzes the impact on
EEOC enforcement activities of the Supreme Court's ADEA decision
in O'Connor v. Consolidated Coin Caterers Corp., 116 S. Ct. 1307
(1996), holding that a prima facie showing of age discrimination
in discharge does not require the plaintiff's replacement to be
outside the protected age group.1
...
5.    ORIGINATOR:  ADEA Division, Office of Legal Counsel.
```

...

7.     SUBJECT MATTER:

    I.    Background and Holding of Decision

    On April 1, 1996, the U.S. Supreme Court issued its decision in O'Connor v. Consolidated Coin Caterers Corp., 116 S. Ct. 1307 (1996).2  The O'Connor decision addressed the narrow question of whether, in order to make out a prima facie case, a plaintiff alleging that he was discharged in violation of the Age Discrimination in Employment Act of 1967, as amended (ADEA), 29 U.S.C. § 621 et seq., must show that he was replaced by someone outside the protected age group (i.e., someone under the age of 40).  A unanimous Court held that replacement by someone under 40 was not a necessary element of an ADEA prima facie case.
    ...

    Thus viewing the prima facie case from the perspective of the McDonnell Douglas framework, the Court stated that there must be "at least a logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a 'legally mandatory, rebuttable presumption.'"  116 S. Ct. at 1310 (citation omitted).  The Court found that the element of replacement by someone under 40 failed to meet this requirement.  Id.  The Court reasoned that no greater inference of age discrimination (as opposed to PAG discrimination) could be drawn when a 40-year-old is replaced by a 39-year-old (i.e., someone outside the PAG) than when a 56-year-old is replaced by a 40-year-old (i.e., someone within the PAG).  Id.  The Court concluded that, "[b]ecause it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside [the PAG] is not a proper element of the McDonnell Douglas prima facie case."  Id.

    In reaching its conclusion, the Court emphasized that the ADEA prohibits discrimination "because of [an] individual's age."
    ...

    The Court further remarked, in dicta, that a prima facie case requires "'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion,'" 116 S. Ct. at 1310 (quoting Teamsters v. United States, 431 U.S. 324, 358 (1977)), and that such an inference cannot be drawn by the replacement of one worker with another worker who is "insignificantly younger."  Id.  Because the ADEA prohibits discrimination based on age rather than on class membership, the Court suggested that, in the age-discrimination context, "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the [PAG]."  Id.

II.     Questions and Answers

The following questions and answers set forth the Commission's position on issues that arise in relation to the O'Connor decision.

1.     Q.     What is the basic holding of O'Connor?

A.     The O'Connor decision holds that a prima facie showing of age discrimination does not require the plaintiff's replacement (if any) to be younger than the PAG minimum age (i.e., 40 years old).

2.     Q.     Does the O'Connor decision change the way in which investigators should process age discrimination charges?

A.     No. O'Connor is consistent with the Commission's long-standing position that an ADEA charge should never be rejected or dismissed on the merits solely because a charging party states that his or her replacement (or comparator) is an individual within the ADEA's protected age group (40 and older).

Indeed, it is the Commission's view that the characteristics of the comparator are not a necessary element of the prima facie case under the ADEA, Title VII, the Americans with Disabilities Act (ADA), or the Rehabilitation Act of 1973.4

3.     Q.     Is it possible after O'Connor to establish a prima facie case and, ultimately, a violation of the ADEA where the respondent does not hire a replacement for the charging party? ...

4.     Q.     In dicta, the O'Connor Court uses the terms "insignificantly younger" and "substantially younger" in referring to a plaintiff's replacement. Does the decision define these terms?

A.     No. In discussing the strength of an inference of age discrimination that might be drawn from the facts of a particular case, the Court merely offers the example of a 68-year-old replaced by a 65-year-old and suggests that such facts might amount to "creating a prima facie case on the basis of very thin evidence." 116 S. Ct. at 1310.

5.     Q.     Is it necessary to make a specific determination regarding whether the charging party's replacement/ comparator is "insignificantly" or "substantially" younger than the charging party? If so, since the O'Connor decision does not define these terms, how will the Commission make that determination?

A.     It is not necessary to specifically categorize that age difference as "insignificant" or "substantial." As in the

past, however, the relative ages of the charging party and his/
her replacement/comparator may be relevant evidence as to the
merits of the case. **Where a specific determination on this point
must be made, the Commission will make it on a case-by-case
basis.**

        We emphasize, moreover, that there is no "bright line"
test for determining whether the age difference can be considered
either "insignificant" or "substantial." **Whether the age
difference is sufficient to support a finding of age
discrimination is simply one of the issues to be considered in
assessing the case.** (See discussion below.)

6.     Q.     Does the O'Connor decision require a "no cause"
dismissal of a charge where it is determined that the charging
party was replaced by a person who is only slightly younger?  For
example, should a charge alleging discharge because of age be
dismissed if the charging party's replacement is only two or
three years younger than the charging party?

       A.     No.  Under no circumstances should a charge be
dismissed without investigation solely because the charging
party's replacement is only slightly younger.  Field offices have
the discretion to consider this point along with all other facts
and circumstances when making a decision on appropriate resource
commitment and a determination on the merits.

7.     Q.     Under what circumstances might a field office issue
a cause determination even though the comparator is only slightly
younger than the charging party?

       A.     There may be a number of circumstances in which such
a cause determination is proper.  The fact that the age
difference between the charging party and his/her comparator is
not "substantial" is simply one piece of evidence that must be
weighed along with all other evidence in determining whether
there is reasonable cause.  For example:

        (1)     **If the evidence showed that the slightly
younger comparator was selected for the purpose of disguising age
discrimination, the relatively slight difference in age would not
defeat the charging party's case.  Such might be the case where,
for instance:**
        ...
              *     The replacement is someone who is nearing
retirement age and who has expressed an interest in retiring --
thus clearing the way for the employer to hire a considerably
younger replacement.
        ...

        Where the comparator is only slightly younger than the
charging party, but the totality of the evidence is adequate to
create an inference of age discrimination, the field should issue

                                                              14

a cause determination whenever the respondent fails to articulate
a legitimate, non-discriminatory reason for its action, or
whenever it is determined that the articulated reason is a
pretext for illegal discrimination.

...

...

    If there are any questions concerning this memorandum or its
application to a specific charge, EEOC investigative staff should
contact their legal unit.

 9/18/96

_____          _____
Date                         Gilbert F. Casellas, Chairman


## MINIMUM QUALIFICATION IS SUFFICIENT

    The District Court was correct in finding that Mulqueen was "qualified" as a matter of law for the purpose of satisfying appellee's prima facie case. This Circuit has held that *"McDonnell Douglas requires only a minimal showing of qualification to establish a prima facie case. [A plaintiff] only needs to demonstrate that she 'possesses the basic skills necessary for performance of the job.'" Owens v. New York City Housing Authority*, 934 F.2d 405, 409 (2d Cir.) (citation omitted), cert. denied, 502 U.S. 964 (1992).

          **Statistics** Statistics are admissible in individual disparate treatment cases, but their usefulness depends on their relevance to the specific decision affecting the individual plaintiff. Lederman and Grossman, 1 Employment Discrimination Law 34.

    We must not disturb the trial court's ruling on the relevancy of the statistical evidence offered by Hajoca unless such decision constituted an abuse of discretion. See Ward v. Johnson, 690 F.2d 1098, 1113 (4th Cir.1982) (en banc ). The district judge did not abuse his discretion in excluding Hajoca's statistics on relevancy grounds. The district judge agreed to allow Hajoca to present statistical evidence concerning employees who were terminated at the company's Staunton branch for a period 18 months before and 18 months after the dismissal of Herold. The court refused to allow statistical evidence for the company's Mid-Atlantic region as a whole. **It was reasonable to conclude that such region-wide statistics would be of limited probative value in determining whether discrimination took place in one particular branch. Furthermore, the court had to take precautions to ensure against juror confusion. Fed.R.Evid. 403. The district judge could reasonably have concluded that the confusion the statistics might cause for the jury would outweigh their probative value.** Hajoca also sought to introduce statistical information for the Staunton facility that covered a period beginning as much as three years before the firing of Herold and up to two years after his layoff. Again, the juror confusion over such statistics could outweigh their probative value.

    Similarly in this case, Eckerd's attempt to take the region wide statistics of Pennsylvania, New York and New Jersey, would be of limited probative value, in

determining whether discrimination took place when Tran rejected D'Cunha and made an offer to Stern in 2001 and hired Babeu in 2002, at Sussex, New Jersey.

However, in this case, the court Abused its discretion in allowing Eckerd to present statistics that had no relation to New Jersey area under Tran that Plaintiff applied to.

It is abundantly clear, there was overwhelming evidence favoring plaintiff, without making any credibility determinations, and no reasonable jury would have given verdict in favor of Eckerd, as Eckerd utterly failed to come forward with a non-discriminatory reason for rejecting D'Cunha twice. **Judgment not withstanding jury verdict for Plaintiff is appropriate,** as the jury ignored the laws of simple logic, and relied on speculation and conjecture instead.

**JMOL FOR PLAINTIFF, IN ABSENCE OF NONDISCRIMINATORY REASON.**

*Employee who proves minimal prima facie ADEA case is entitled to prevail as a matter of law, even without evidence that would support reasonable finding of discriminatory motivation, if employer fails to come forward with legitimate nondiscriminatory reason. **James v. New York Racing Ass'n,** 233 F.3d 149, 154 (2nd Cir. 2000).* In this case, plaintiff's prima facie case is strong, and in addition Defendant failed to provide proof of legitimate non-discriminatory reason, therefore Judgment as a Matter of Law for plaintiff is appropriate.

D'Cunha's background for considering his qualification for job with Eckerd is a valid point, however *background of D'Cunha's Walgreens performance in 2005 is Not a valid consideration for evaluating qualification for Eckerd Job in August, 2001 and Feb. 2002.* Bucci made a deceptive presentation of Colaizzi Jr. Depo prior to Dolan and Tran's testimony and thus played a fraud on the jury, making it seem that Walgreens job performance( though false) was a fair consideration. The judge also allowed this deceptive ploy to proceed.

The defendant Eckerd has rehashed the same arguments it made before the District Court and the 2nd Circuit court at Summary judgment because that is all they have, and indeed nowhere to hide. Eckerd can not ignore the preponderance of evidence plaintiff has produced to make his Prima facie case and to show that Eckerd's reasons were pretext to hide Age discrimination.

What the court did was like a cop who says, I did not stop the guy prior to attack when he was approaching, because the assault did not take place. Same way judge allowed Bucci to ask the Unfairly prejudicial question, (fully) whether, Plaintiff filed discrimination charge against Walgreens. Plaintiff did Object before Bucci completed the question, but Judge clearly and intentionally allowed Bucci to ask full question and then sustained, after the harm was done. Judge also abused Discretion in denying Plaintiff's In Limine motion # 9, which says, Defendant needs to ask Judge's permission prior to asking objectionable and prejudicial questions. See: *Trial Transcript* **306: 9-19**

**Denial of bifurcation is another basis for granting JNOV or a New Trial, because bifurcation would have led to jury finding of Eckerd's liability and Plaintiff would have been awarded damages, as he made reasonable attempts to get job as shown in Exh. P20.**

Our review of a motion for new trial under Fed.R.Civ.P. 59(a) is governed by a different standard. On review of a motion for new trial, we are permitted to weigh the evidence and consider the credibility of witnesses. See Poynter v. Ratcliff, 874 F.2d 219, 223 (4th Cir.1989). A new trial will be granted if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir.1996). The decision to grant or deny a new trial is within the sound discretion of the district ███, and we respect that determination absent an abuse of discretion. See id.

Considering the credibility of witnesses, Tran was least credible of witnesses, as he was impeached on a material issue, with regard to the 8 Full Time positions for Pharmacists, as of 8/23/01. He in fact clearly lied. When he was shown the enlarged document D-10. marked DEF – 26, Tran started giving confusing explanations, and the court allowed that explanation, over Plaintiff's objections. Tran in fact changed his deposition testimony on other occasions, to escape being impeached.

Because of this, Tran's testimony that contradicts plaintiff's testimony should be rejected and would be rejected by a reasonable jury. When reasonable inferences are made based on this fact, it becomes clear, that **the jury verdict was against the clear weight of the evidence.**

**This Verdict may have also been based on false evidence, due to Bucci's fraud played on the jury.**

**Finally this verdict has resulted in miscarriage of justice. Plaintiff humbly requests this honorable court, to grant him a new trial, as it is within the court's sound discretion.**

## Brief: 14 – 23

**No reasonable jury would ignore the fact that Eckerd failed to explain, just where did the 8 Full Time pharmacist positions in Tran's district disappear. This is only possible with speculation and conjecture, which is what happened in this trial. (Brief: 15)**

Bucci mistakenly thinks that plaintiff is relying on 2nd Circuit to make his PFC. Plaintiff asked the court to clarify 2nd Circuit's decision, that was prior to trial. However, Plaintiff successfully and forcefully presented all the evidence needed to make the Prima Facie case of age discrimination. That still does not mean, that this court may not have made an error of law. That issue is aside, Eckerd just has no basis to support the jury verdict with any credible evidence in its favor.

As Eckerd failed to get their business representative at the trial, and got a person who did not represent Eckerd, but it's parent corp. Rite Aid, plaintiff could not lay the foundation for the documents except through Tran who was not a Human Resource employee. However, Tran did admit that DEF-26, was a business document of Eckerd, and other details of 8 full time pharmacist positions as of 8/23/01 in his district in New Jersey, as stated above.

Using simple laws of logic, it is extremely difficult to see, how Mr. Bucci sees a reasonable jury accepting the sudden disappearance of not one, not two but eight(8) full time pharmacists positions, that were open in Tran's area, that Tran admitted was clearly on the business document produced by Eckerd. A reasonable jury will certainly infer Tran is clearly lying regarding the open positions, and his real reason to reject D'Cunha was his age (**Brief 17**).

Lack of experience, according to reasonable jury can not be basis for rejecting D'Cunha, because, Eckerd mailer did not require any experience. Additionally, Dolan and Tran admitted Eckerd hired non-experienced pharmacists. Tran himself hired three very young pharmacists in their twenties, with zero registered pharmacist experience. These are the reasons a reasonable jury will infer, Tran is bringing up experience as a pretext to hide the real truth of discrimination against D'Cunha because of his age ( **Brief 18**).

**Tr. 409 – 412** Tran admits, despite Stern's great qualifications including an MBA in business administration and 25 years managerial experience, he was in fact offering her a lower position as a pharmacist, instead of a managerial or supervisory position on par with her qualification. Additionally, nowhere on her resume Stern has stated she was looking for pharmacist position.

A reasonable jury would infer, based on Stern's extraordinary qualifications, an offer of a pharmacist position to her instead of a manager or supervisor's position would be an insult to her present status with CVS a competitor and # 1 chain of drug stores in the U.S. Tran said he could not help Stern go up the corporate ladder, despite her qualifications, and decided to push her down the corporate ladder instead.

Additionally, Stern's Resume does not state she was looking for a pharmacist position.

Finally, reasonable jury will see that Eckerd's reasons for rejecting D'Cunha keep shifting and there is a big credibility gap.

**Brief 19:**     Finally, the incredible upside down logic of Mr. Bucci would have the jury make inferences of D'Cunha's ability to function as a pharmacist, based on patient safety concerns he derives from 2005 fabricated substandard performance of D'Cunha at Walgreens. Reasonable jury would Not consider this connection even if all these fabrications were true, because no inferences are made regarding present ability, from the future performances. Bucci's insistence on this kind of inference being OK, and putting aside of 8 open positions being O.K. and all this upside down logic, I wonder, if the jury was tampered, which may explain why I did not get billed for the jury service charges. I am inclined to believe this because I believe Bucci even contacted my Cardiologist Dr. Arora as well as people from Records Solutions who keep NYHQ records, and I have proofs of these, but at the last moment, the judge dismissed my complaint, despite fact Judge Wolle had said Rite Aid will be a defendant at a hearing, and J.C. Penney will be dismissed.

18

**Brief 20-21 :**   Sussex argument is much a do about nothing. The whole issue is finding out the state of mind of Tran, his belief, as well as his knowledge of certain facts that he himself does not deny.

1)    Tran accepts, D'Cunha wrote on his job application form, that he will work any shift, **Anywhere in New Jersey.**

2)    Tran further accepts, it was none of his concern how plaintiff went to the job, once it was offered.

Let's pause right here, and let a reasonable jury take over. The Jury will say:

a)  Tran knows D'Cunha is willing to work Anywhere in New Jersey (and Sussex is in New Jersey).

b)  Tran is not concerned how D'Cunha gets to the store, once the job is offered.

A reasonable jury would then conclude:  Tran CANNOT  say, I believed D'Cunha was not interested in Sussex, because this statement contradicts the factual statements a) and b) above.

Additionally, there is another proof Tran is telling a lie. Tran says he believed D'Cunha not interested in Sussex. However, at trial Tran told D'Cunha that D'Cunha himself told Tran, that he was not interested in Sussex.

Now if D'Cunha had indeed told Tran, he did not want to go to Sussex, then Tran would not use the word I believed.

**Tr. 367 -68 and Exh. P5,** An Eckerd Advertisement, showed that Eckerd offered Relocation package for all newly hired pharmacists. **This was one more reason why Sussex position should have been offered to plaintiff by Tran.**

<u>Tr. 368; 3- 24</u>   Additionally, since Tran is talking about D'Cunha's interest in Sussex, and/or whether or not he wanted to go there, the question of Qualification is clearly resolved in favor of D'Cunha. If D'Cunha was not qualified, Tran would not have talked about D'Cunha's ability to get to Sussex and / or his interest in the position.

**Abuse of Discretion:** Judge does not allow Plaintiff to read even one sentence that was material to this case, just 7 words that would take 10 seconds at the most. <u>The judge was biased toward Eckerd, Sufficient reason for New Trial due to erroneous rulings.</u>

There were occasions the judge ruled in favor of Plaintiff, but that was the exception, than the rule. Only when it was legally impossible, such as admitting Stipulation Number Two and Three, and Exh. P20, but otherwise as

a rule, the court ruled in Eckerd's favor, and sometimes court sustained plaintiff's objections only to overrule them within seconds, such as one regarding Lederman and other pharmacists hired from states other than New Jersey.

Also the court allowed Exh. D-19, Defendant's responses to interrogatories of Defendant, even though court told plaintiff that interrogatories are not admitted as evidence, and yet Eckerd was allowed to admit its responses to interrogatories. Plaintiff wanted to do the same about his mitigation efforts but was prevented by the court as stated above.

In this disparate treatment case, the only proper comparators are Stern and Babeu, the pharmacists who were offered job, after D'Cunha was rejected. As the EEOC guidance above and court authorities clearly state, that if a significantly younger person was hired, then there is an inference in plaintiff's favor, as the 2nd circuit has already ruled in this case earlier. So Mr. Bucci's arguments on **Brief 21-22** are baseless, as he is trying to bring in hires from other states other than New Jersey, where plaintiff applied, and court made an error of law to admit that evidence, and plaintiff requests that that piece of evidence be stricken off. Also, Eckerd never made this assertion at the time of Appeal before the 2nd circuit, and thus it was barred from bringing it at trial.

BACK PAY DAMAGES

**Brief 22 – 23**   See: Exh. P20, and note the fact, plaintiff not afforded fair opportunity to present his evidence of reasonable attempts to obtain job, as court kept rushing plaintiff with the testimony, at same time giving liberal amount of time to Eckerd for whatever it wanted to do, including present highly prejudicial statements, evidence, and even making false statements, despite Stipulating otherwise.

**It was Defendant Eckerd's burden to show :**

**1) there were comparable jobs available in the market and**

**2) Plaintiff failed to make reasonable attempts to get job.**

Eckerd tried **unsuccessfully** to show plaintiff did not make reasonable attempts to get job, but they Eckerd did not even try to show that there were comparable jobs available for plaintiff from 2001 to trial date. Eckerd has totally failed to meet their burden and if plaintiff wins on liability issue, then Back-wages will not be reduced. See:<u>For authorities and full details, see Plaintiff's brief in opposition to Eckerd's In Limine brief to preclude Back-wages, and testimony regarding mitigation of damages. *Eckerd failed to meet its burden to prove plaintiff's failure to mitigate.*</u>

Plaintiff's reasonable attempts to get comparable job are listed in Exh. P20. However the court prevented Plaintiff from explaining his mitigation efforts in detail. (See Trial **Tr. 145-146). This was probative element of plaintiff's mitigation efforts and judge just ordered plaintiff not to mention it, because it is before the jury.** See: **Tr. 152 -154** However, the court allowed Exh. P20, excluding the pages that court did not admit due to Eckerd's objections ( See: **12/8/09 TRIAL Tr. 145 – 151).** Strangely, those were the pages that would precisely answer Eckerd's assertions later that certain time period between 2001 Aug. to 2002 Feb., and again 2002 to 2005 June. **This is total Abuse of Discretion by the court and error of law as well.**

**Brief 23-26** The Walgreens discharge was greatly prejudicial, more so because of the out of sequence video deposition of Colaizzi Jr. Even without such arrangement, this evidence, though relevant to Eckerd's proof of failure to mitigate element, it should have been thrown out as Highly and Unfairly prejudicial, because that is an element that made jury believe plaintiff was not competent, and shrewd Bucci made the most of that opportunity. See: FRE 403, Unfair Prejudice.

*This was similar kind of evidence as Plaintiff's ADEA charge against Walgreens court denied, but let in thru back door, by allowing Bucci to ask full question, and jury knew it. Jury's mind was fully poisoned, and confused by these pieces of evidence, and judge was fully aware of it. That is why jury's verdict was for Eckerd.*

### *Bifurcation request was made appropriately, and timely.*

*The request for Bifurcation could not have been made earlier, before the court's rulings on In Limine motions, because if court were to deny Walgreens evidence, then there would be no need for bifurcation at all.*

*The exclusion of EEOC charge against Walgreens was futile, as plaintiff mentioned earlier, because judge allowed a way for jury to know that thru Bucci's question, which plaintiff anticipated and so could the judge, but the court simply ignored it and allowed the Unfairly prejudicial question to be asked and then sustained the objection.*

*Brief 28-29 Videotaped deposition of Colaizzi Jr. was the most prejudicial and caused great and unfair prejudice to plaintiff that is beyond repair, that is what confused the jury and the result was a verdict totally based on speculation and conjecture.*

Brief: 30        It is stupid logic to say NY license is part of qualification requirement to work in New Jersey, and this court simply allowed Bucci's rare brand of logic to have its way. Eckerd mailer did not ask for both NY license.

Brief 31-32;    Depositions and Affidavits as well as complaint are admissible under exception to hearsay rule of evidence FRE 801, ut judge did not allow.

It was error of law for judge to exclude Stip One, as he did not find out whether or not documents were relevant at all, and simply ruled jury may confuse authenticity with truth, instead judge should have instructed jury regarding any possible confusion, and

Eckerd did not claim any Unfair prejudice. The judge seemed more like an advocate for Eckerd, than an impartial officer of the court.

**Brief 32-34**  Indeed A district judge does have broad Discretion to Control the course and conduct of the Trial, however Judge Wolle abused that Discretion, through his numerous rulings throughout the trial, most of them very unfairly and unjustly against plaintiff. Judge Wolle's most rulings were capricious, showing a pattern of bias.

**Brief 35:**                    ECKERD'S WILFULNESS

**Tr. 424:** At the trial Bucci merely said that Eckerd's position is the Willfulness charge should not go to the jury, without giving facts or the legal authorities. Besides, willfulness is a matter of fact for the jury.

Regarding Eckerd's willfulness, in Feb. 2002, Eckerd made no good faith efforts. Only efforts Tran made were to mislead D'Cunha by giving him wrong or no information of Eckerd stores, and wrong info of Radice being the District pharmacy supervisor, in-charge of Sussex.

**See: 857 F.2d 363**    The Court referred approvingly to definitions of "willful" as (1) " 'wholly disregards the law ... without making any reasonable effort to determine' " whether the actions violate the law (quoting Nabob Oil Co. v. United States, 190 F.2d 478, 479 (10th Cir.1951), certiorari denied, 342 U.S. 876, 72 S.Ct. 167, 96 L.Ed. 659), (2) " 'careless disregard [for] whether or not one has the right so to act,' " (quoting United States v. Murdock, 290 U.S. 389, 395, 54 S.Ct. 223, 225, 78 L.Ed. 381), and (3) "a disregard for the governing statute and an indifference to its requirements" (citing United States v. Illinois Central R. Co., 303 U.S. 239, 242-243, 58 S.Ct. 533, 534-535, 82 L.Ed. 773). Thurston, 469 U.S. at 126-127, 105 S.Ct. at 624-625.

In Thurston, the Supreme Court explicitly rejected a proposed definition of willful that allowed liability if the employer knew that the ADEA was "in the picture," because that standard would allow the recovery of liquidated damages even if the employer acted "reasonably and in complete 'good faith,' " a result the Court thought contrary to Congress' intent. 469 U.S. at 127-128 and n. 22, 105 S.Ct. at 625 n. 22. This Court interpreted the **Syvock definition to comport with this concern because "if an employer reasonably should have known that its actions were illegal, then the employer was not acting reasonably. Furthermore, this standard avoids rewarding employers who are unreasonably ignorant of the law."** Rengers, 825 F.2d at 165.

Finally, in dicta, this Court discussed the possibility that the Syvock definition might have stated the law incorrectly. We held that "under the facts of this case the failure to use the reckless disregard instruction would be harmless error not affecting the substantial rights of the parties" because **"WCLR admitted that it was familiar with the requirements of the ADEA, ... [and] [g]iven this concession, it is hard to imagine how WCLR could argue (let alone succeed in convincing a jury) that even if it fired plaintiff because of his age it was not done in 'reckless disregard' of the ADEA."** 825 F.2d at 166 n. 5.

22

Similarly, based on overwhelming evidence of D'Cunha's rejections because of his age and the fact Tran admitted he was trained in ADEA requirements and also knew D'Cunha had complained to Eckerd in February 2002, of being a victim of age discrimination, how could Eckerd argue D'Cunha's rejection not done in "reckless disregard" of the ADEA.

### Brief 35-36

See: Tr. 423 – 425   Court refused to let Eckerd's Willfulness be submitted to the jury, despite the fact it is a matter of fact to be determined by the jury. This is error of law, and Abuse of Discretion. Plaintiff cited appropriate authorities such as Smith v. Wade, Price v. Marshal Erdman and Associates etc. But the judge just ignored and said there needs to be more egregious proof, which is incorrect statement of the law. Eckerd's arguments are clearly refuted by the authorities plaintiff cited at trial as well as the ones quoted above. Additionally, Eckerd's citations should be stricken out off the record, as Eckerd did not cite any authority at the side bar during trial, only plaintiff did, and the judge refuted plaintiff citing authorities that Eckerd should have, thus the court played advocates role for Eckerd.

Bucci's arguments are repetition of what judge Wolle quoted at trial, however, many authorities plaintiff quoted in his trial brief as well as here above, clearly refute the requirement of egregiousness, on one hand and mere knowledge of the ADEA law on the other. In this case, plaintiff has proven that not only did Tran get training of ADEA from Eckerd ( which itself is opposite of what he said at his deposition ), but also knew Plaintiff claimed of being victim of age discrimination due to Aug. 2001, rejection. Additionally, Tran said, neither he nor his supervisor  consulted a lawyer, and finally, in violation of ADEA, Tran failed to document rejections of D'Cunha on application form, which was probably destroyed, and court refused to allow plaintiff from presenting evidence regarding that as well.

Eckerd had its wish of excluding 2nd Circuit's opinion excluded from the trial. However, now that plaintiff produced same evidence that was before second circuit, the determinations of 2nd circuit remain as a matter of law and this court is bound by it due to Law of the case doctrine. It was in fact an error of law for the court to ask plaintiff to produce all of the evidence all over again, as assertion plaintiff maintains.

Now this court must accept that 8 years is indeed a significant age difference, and also that Eckerd's assertion that it did not discriminate because it offered job to Babeu (42) who is also in PAG, as D'Cunha (50), is an illegitimate one.

*Additionally, this court must sanction Bucci for perpetrating a fraud that D'Cunha was only 49 in February 2002, despite agreeing to it in Stipulated facts (See: Stip. Number Three ).* These are serious matters. Even second circuit had determined D'Cunha was 50 when Tran interviewed him in Feb. 2002, and the judges there must know lot more than Bucci regarding judicial determinations of facts.

23

**Brief 36  and Eckerd's footnote 10: says Eckerd perpetrating fraud not supported by facts:**

**Also Brief 7:** Once again Eckerd is fraudulently claiming Plaintiff was 49 in February 2002, when Tran interviewed him, despite the fact, *Stipulation Number Three, Exh. P53, at #15 and # 17* clearly states Plaintiff was 50 years old when he met Tran in February 2002. Bucci perpetrated the same fraud with Judge Block and the circuit court; but it did not work at the circuit court, as at the evidence was scrutinized heavily, and the circuit court did not get carried away with deceptive arguments of Bucci.
**Also See: Tr. 229: 15– 230:6**

*Now, as a lawyer, Bucci must know that once you stipulate to a fact, then to make it a contentious issue is unlawful, and Bucci did this knowingly, and therefore the court must sanction him for this behavior that amounts to Professional Misconduct. By bringing this issue before jury, despite stipulation, was an attempt to embarrass plaintiff, and the jury certainly was not reasonable if it concluded plaintiff was 49 in February 2002, and even if it did, the court must reject that inference totally, because parties have stipulated plaintiff was 50 in Feb 2002 when Tran interviewed plaintiff.*

**ALL FRAUDULENT, MISLEADING AND FACTUALLY FALSE STATEMENTS OF BUCCI, ECKERD'S ATTORNEY, ( INCLUDING THE ASSERTION THAT D'CUNHA WAS 49 IN FEBRUARY 2002,DESPITE STIPULATING THAT D'CUNHA WAS 50, IN FEBRUARY 2002, WHEN HE MET TRAN) MUST BE STRIKEN OUT OF THE TRIAL RECORD AS A MATTER OF LAW. This court must do this to show genuine discretionary control over the fairness of the Trial Process. See; Brief 7, and Stip. THREE, Exh. P53. Tr. 229 – 230**

**Brief 37:** *Indeed refusing to give "8 years is a significant age difference" and "Pretext" jury instruction was an error of law, as it affected plaintiff's substantial rights, and is probably the main reason why jury did not understand the requirements of law in this disparate treatment case. Judge never did explain that if someone significantly younger is hired for the position plaintiff was rejected for, then there is an inference of age discrimination.*

*The court did make specific statement, "To the extent your proposed instructions are different from mine, that gives you a basis for objecting to mine." See: Tr. 471:16-18.*

**ECKERD CAN NOT BRING IN ASSERTIONS NOT MADE BEFORE 2nd Cir. At SUMMARY JUDGMENT STAGE**

Eckerd's Opposition Brief before 2nd Circuit dated 9/24/2004 does Not mention anywhere Lederman, Paar, Softy, Valkova, Ahmed and Zablocki as a pharmacists hired by Tran. As such, even under some exception, if these would otherwise be permitted, Eckerd has waived its right to introduce this evidence at trial, and should therefore be excluded for yet another reason. **This is inadmissible Evidence, that must be stricken**

24

out of the record of this trial. Court had ruled, answers to interrogatories not admissible, then why allow Eckerd the exception. **ABUSE OF DISCRETION, RULE 403, UNFAIR PREJUDICE TO PLAINTIFF.**

## Weiss v. JPMorgan Chase & Company, 2d Circ., No. 08-0801, June 5, 2009.

David Weiss alleged that he was terminated from his position at JPMorgan Chase & Company in violation of the Age Discrimination in Employment Act (ADEA) after he was replaced, at age 56, by an individual 16 years his junior. The parties agreed that Weiss presented a prima facie case of discrimination, and that JPMorgan introduced evidence that it had a legitimate non-discriminatory reason for firing Weiss.

On appeal, the Second Circuit reversed …decision, and held that based upon the available facts – when viewed in a light most favorable to Weiss – a jury may have been able to infer pretext regarding JPMorgan's reasons for Weiss' termination. The Second Circuit addressed each of the arguments asserted by Weiss in response to the reasons proffered by JPMorgan, and found each to have created such an inference. …

Importantly, the Court went into detail about the company's "shifting explanations" for Weiss' termination, stating specifically that *"[i]nconsistent or even post-hoc explanations for a termination decision may suggest discriminatory motive."*

**Similarly, Eckerd gave inconsistent and even post-hoc explanations for D'Cunha's two rejections, a reasonable jury would infer from shifting explanations of Eckerd a discriminatory motive.**

**Leibowitz v. Cornell University (2ⁿᵈ Cir. October 23, 2009)**
Docket No. 07-4567-cv

…

1 Age discrimination claims brought pursuant to the NYSHRL and the NYCHRL are analyzed under the ADEA framework, *see Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 114 n.3 (2d Cir. 2007)…

2 The Court notes that, pursuant to the Supreme Court's recent decision in *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343, 2350-51 (2009), a claimant bringing suit under the ADEA must demonstrate that age was not just a motivating factor behind the adverse action, but rather the "but-for" cause of it. *See Id.*

Once a plaintiff has established a prima facie case of age or gender discrimination, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the' [adverse act]." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996)) (Title VII); *see, e.g., D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007) (ADEA). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). However, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (quoting *Burdine*, 450 U.S. at 253).

**The mere fact that the employer's decision not to renew is completely discretionary does not mean that it is not an "adverse" employment decision.**

Although the parties focus on the terminology used

25

with respect to the plaintiff, whether plaintiff was "laid off" or "terminated," or her employment was "not renewed" is not critical to the legal analysis; rather, she suffered an adverse employment action because she was denied the requested continued employment, regardless of the label.

2. Inference of Discrimination

We have made clear that a variety of circumstances can give rise to an inference of discrimination, including those outlined above.
Where, as here, …
*See, e.g., Carlton,* 202 F.3d at
135 (finding sufficient evidence of age discrimination for prima facie case where 57-year old plaintiff was terminated and his duties re-assigned to substantially younger employees);
...
Accordingly, the district court erred in concluding that plaintiff did not meet her burden of establishing a prima facie case of age and gender discrimination. <u>Leibowitz v. Cornell University (2nd Cir. October 23, 2009)</u>

*Similarly in the case at bar, the label of Entry level position, or Staff pharmacist position, Floater pharmacist position, or a Non-Experienced pharmacist position, is not critical to the legal analysis of qualification for the Job plaintiff applied for at Eckerd. ... A reasonable jury will infer there is overwhelming evidence of age discrimination where D'Cunha (50) was rejected and Babeu (42) hired instead. Additionally jury will infer from Eckerd's pretextual reasons, that Eckerd did reject D'Cunha because of his age.*

## EVIDENTIARY RULINGS

**Brief: 33**      Foot note 20 of Eckerd shows selective memory and / or response of Mr. Bucci, as he mentioned only first part of court correcting the caption of case to remove Genovese, but forgot that court put it back in for the Judgment. See: Copy of the judgment, and also Bucci had brought this point up, but judge said it's OK. It was very strange ruling by the court, meant to confuse plaintiff.
Foot note 21, Bucci mentions JPTO, not directed by the court. This is precisely plaintiff's contention, that the Judge by directing parties to file JPTO, caused greatly Unfair prejudice to plaintiff, as that led to plaintiff's inability to preserve many of his rights. Plaintiff had specifically written to the court to direct Bucci to file the JPTO, but Eckerd refused, and it seems the court knowingly ignored the issue to protect Eckerd rather than protect rights of each party, as the JPTO sets the ground rules for the trial and each party is to follow them. Plaintiff will produce the last such draft, prior to Eckerd changing the Defendant's rep. Lisa Ford, to 2nd Cir. If this case goes to Appeal.
      For Voir Dire, the process was not at all fair, as jury members were selected despite some of them being Rite Aid, Genovese, and Eckerd customers, and plaintiff's objection overruled and plaintiff not allowed to address the jury to find bias.

## Brief 34:      *Rule 61.*

Unless justice requires otherwise, no error in admitting or excluding evidence — or any other error by the court or a party — is ground for granting a new

26

trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that **do not affect any party's substantial rights.**

**In this case the errors by the court did affect the substantial rights of plaintiff, in that:**

a) Colaizzi Jr. video deposition that was admitted in first place,

b) Walgreens discharge and Colaizzi Jr. Depo. Not bifurcated, and

c) Colaizzi deposition was played out of sequence to perfectly make it appear, the discharge from Walgreens took place prior to D'cunha's interview with Tran.

This was enough to confuse the jury that the fabricated instances of mistakes by D'Cunha, the lateness, and all other (unsubstantiated) problems at Walgreens (none of which D'Cunha was warned about), to have taken place prior to D'Cunha's interviews with Tran, and yet Judge Wolle allowed it to be presented out of sequence and also said "that sounds like a good plan."

The jury therefore must have taken Walgreens alleged substandard performance to be prior background of Plaintiff that Tran may have considered and hence rejected D'Cunha, when in fact Tran could not have known those things even if those instances are presumed to be true, as they took place in 2005, 3 to 4 years later. This led the Unjust jury verdict, based on false assumptions and / or mere speculation, as other wise there is absolutely no basis for verdict for Eckerd.

As a matter of fact, Bucci's assertion that these rulings by the court did not affect plaintiff's substantial rights is another example of how he sees logical connection between events and how he makes conclusions of law by distorting facts and jumbling up events out of sequence. However, the court is duty bound to require the jury to make reasonable inferences based on laws of simple logic, not speculation or bias and for that parties need a panel of jury that is fair minded, which the judge did not allow. Based on **FRCP 61** and precedents of 2nd Circuit, the court must grant Judgment as a matter of law, not withstanding jury verdict, and grant plaintiff's motion for new trial.

**Brief: 35-37**
**The jury instructions were totally inadequate for the jury to be able to deliberate properly on an ADEA disparate treatment case. Plaintiff maintains his objections and insists that proper jury instructions would have resulted in fair and just verdict based on probative evidence and not speculation.**

## JURY SELECTION AND DELIBERATION TIME:

Once the list of prospective jurors has assembled in the courtroom the court clerk assigns them seats in the order their names were originally drawn. *At this point the judge often will ask each prospective juror to answer a list of general questions such as name, occupation, education, family relationships, time conflicts for the anticipated length of the trial. The list is usually written up and clearly visible to assist nervous prospective jurors and may include several questions uniquely pertinent to the particular trial. These questions are to familiarize the judge and attorneys with the jurors and glean biases, experiences, or relationships that could jeopardize the proper course of the trial. After each prospective juror has answered the general slate of questions the attorneys may ask follow-up questions of some or all prospective jurors. Each side in the trial is* allotted a certain number of challenges to remove prospective jurors from consideration.

In this case, Judge Wolle neither asked pertinent questions to know the background of the jurors, nor gave them sufficient idea of what the case was all about, except a one sentence statement, did not allow parties to address jurors, and allowed jurors who were Rite Aid, Genovese customers to be part of the jury, despite Plaintiff's objections, as these companies were/are subsidiaries or parent companies of Eckerd. Additionally, Judge Wolle did not allow parties to ask pertinent questions to find bias or conflict of interest. This is **Abuse of Discretion.**

**Brief 38:**  In <u>Munson</u> , the court determined three hours time was sufficient time, and there is no **magic** time for jury deliberations, however,  for justice to prevail, there should be **Logic ti**me, meaning **reasonable amount of time**. 30 minutes of time for deliberating a case that was highly document bases and also required the jury to make many inferences regarding the reasons given by Tran, Tran's state of mind, as well as credibility of Tran based on the Eckerd business documents, Tran's own testimony, testimony of Dolan, testimony of Travel expert Phraner as well as documents from Plaintiff, Ms. Stern, etc. 30 minutes time is absolutely unreasonable amount of time for deliberation of this particular case. In some cases 30 minutes may very well be reasonable amount of time, but that is not the case here, given the particular situation of this case.

1.      It is clear the jury needed at least 10 to 15 minutes to get to know each other. Then they must have taken at least another 20 minutes to select a presiding juror (jury manager). This is already 30 minutes time.

2.      Next, jury needed to understand the law as given to them in jury instruction, which itself would take them at least an hour to discuss and understand it, including discussion on how to apply it.

3.      The jurors then needed to apply the law to the facts, starting with Stipulations, the proven facts, then other exhibits and the testimony of all witnesses, by assessing the weight to be given to their testimony, including determination of who was impeached on material matters.

4.      Then determine whether or not, each element of claim and/or defense been proven or not.

least 10 to 20 minutes to talk on these important deliberation elements. The jury therefore needed another 80 to 160 minutes that would take them to the voting stage. Given these reasonable estimates, it is clear, 30 minutes was unreasonably too little time for jury to deliberate and arrive at a verdict.

Three hour time in **Munson** case was significant amount of time, for almost any case, however 30 minutes of time is Not at all sufficient time except may be one day trials with one simple issue.  In any case for the jury to have reached the verdict in 30 minutes is absolutely, unreasonably too small an amount of time and only way to interpret this is that jury rushed to judgment, and or used conjecture and speculation as basis for the verdict.

## CONCLUSION

For all of the foregoing reasons, Plaintiff humbly and respectfully requests the court to grant Plaintiff's motion for judgment not withstanding jury verdict, and his motion for a new trial.

Dated: Flushing, New York

January 29, 2010

Respectfully submitted

*Patrick F O'Cunha.*

Patrick F. D'Cunha, Plaintiff, Pro-Se

137-22 Laburnum Avenue,

Flushing, NY 11355

Email: dragondcunha@aol.com

**CC:**   Copy to Mr. Bucci, via Email.

29